ATCHISON, T. & S. F. RY. CO. v. HILL et al.
(No. 670.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 14, 1914. Rehearing Denied Dec. 12, 1914.)

1. TRIAL (§ 260*) — INSTRUCTIONS — SUBMITTING AFFIRMATIVE DEFENSE.

A special charge affirmatively presenting in detail the elements of an affirmative defense established by evidence should not be denied, though a general charge presents in a general manner the same defense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

2. TRIAL (§ 260*) — INSTRUCTIONS — SPECIAL AFFIRMATIVE CHARGE.

Where the evidence almost conclusively established a case against defendant presenting an affirmative defense, refusal of a special charge affirmatively presenting in detail the elements of the defense was not error, where the general charge presented the defense in a general manner.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

3. CARRIERS (§ 211*)—INTERSTATE CARRIAGE OF LIVE STOCK — VIOLATION OF TWENTY-EIGHT HOUR LAW.

A violation by a carrier of an interstate shipment of live stock of the Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. 1913, §§ 8651–8654]), relating to unloading stock for feeding, is negligence per se rendering the carrier liable to the shipper for resulting injuries to the stock.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928; Dec. Dig. § 211.*]

4. CARRIERS (§ 211*)—INTERSTATE CARRIAGE OF LIVE STOCK — VIOLATION OF TWENTY-EIGHT HOUR LAW.

A carrier of swine cannot justify a violation of the Twenty-Eight Hour Law by relying on regulations of the Bureau of Animal Industry providing that public stockyards shall be considered infectious, and no interstate movement of swine therefrom shall be made for feeding purposes, but that swine not diseased and not exposed by being in yards may be shipped, and that cars that have contained interstate shipments shall not be removed until the inspector has ascertained the condition of the stock, and either released the cars or given notice that they shall be disinfected, where the swine came from private pens and were loaded in disinfected cars, in the absence of anything to show that the carrier could not provide uninfected pens.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928; Dec. Dig. § 211.*]

Appeal from Armstrong County Court; H. L. Mobley, Judge.

Action by J. E. Hill and another against the Atchison, Topeka & Santa Fé Railway Company and others. From a judgment for plaintiffs against defendant named, it appeals. Affirmed.

Madden, Trulove & Kimbrough and H. C. Pipkin, all of Amarillo, for appellant. W. A. Wilson, of Claude, and Turner & Wharton, of Amarillo, for appellees.

HENDRICKS, J. The appellees sued the Atchison, Topeka & Santa Fé Railway Company, also the Eastern Railway Company of New Mexico, the Pecos & Northern Texas Railway Company, and the Ft. Worth & Denver City Railway Company, in the county court of Armstrong county, Tex., alleging damages on account of negligence of the defendant carriers. The cause was tried to a jury, resulting in a verdict against the Atchison, Topeka & Santa Fé Railway Company, the appellant herein, for the sum of $575, and in favor of the other defendant carriers. The record discloses that J. E. Hill purchased two car loads of hogs, 365 in number, of one W. F. Holloman, and that the latter, prior to the sale of his hogs to the former, on October 23, 1912, had made a written order with the railway agent at Artesia, N. M., for double-deck cars for the purpose of shipping the hogs. The railway company was unable to furnish the double-deck cars, and the next day, the 24th of October, 1912, the train dispatcher of the Santa Fé at Roswell, N. M., was telegraphed to furnish two single-deck cars for the purpose of the shipment. The hogs, during this time were in private pens

adjoining one of the switch tracks of the defendant Santa Fé Railway Company at Artesia, and the single-deck cars were not furnished by said train dispatcher until Saturday, October 26th, at 7:50 p. m. The shipment did not leave Artesia, N. M., until 1:55 p. m. on October 28th (destined for Claude, Tex., on the Ft. Worth & Denver City Railway), and upon arrival at Roswell on the line of the Santa Fé at 5:10 p. m. the same date, were held on the cars at that place until 5:50 p. m. October 29th—over 24 hours' delay at the latter station. The trial court charged the jury in paragraph 5 as follows:

"When a railway accepts a shipment of live stock for transportation, it becomes its duty to exercise ordinary care to transport to its destination within a reasonable time, or to deliver it to its connecting carrier over whose lines such stock must be transported. What would be a reasonable time in a given case must be determined by the jury from all the facts and circumstances of the case, as shown by the testimony in view of the character of the shipment and its liability to injury in the time of transportation. Now, if you find and believe from a preponderance of the evidence that the defendants or either of them failed to use ordinary care to transport the said shipment over its lines within a reasonable time, and that plaintiff was damaged thereby, then you will find for the plaintiff such damages, if any, which he has incurred by reason of such failure against the defendants so failing; otherwise you will find for the defendants on this phase of the case."

Also submitting the following as paragraph 6:

"Paragraph 6 of the court's main charge instructed the jury that: You are instructed that it is the duty of the carrier over whose lines a shipment is transported to use ordinary care to prevent such shipment from injury. Now, if you find and believe from the evidence that the shipment in question was damaged by the drenching with water, as alleged by the plaintiff, and that said damages were the proximate result of the failure of the said defendant to use ordinary care for the protection of the said shipment, then you will find for the plaintiff such damages, if any, as may be accrued to him by reason of such failure to use ordinary care to prevent such injury, and assess the damages against the defendant or defendants so failing; otherwise you will find for the defendants on this phase of the case."

The appellant, Atchison, Topeka & Santa Fé Railway Company, assigned as error the refusal of the trial court to submit to the jury their special charge No. 2, which is as follows:

"Gentlemen of the jury, you are instructed that, if you believe and find from the evidence in this case that the plaintiff or his agent made a reasonable request upon the defendant's agents at Artesia for this defendant to furnish cars for the transportation of the hogs in question, and if you further believe and find from the evidence after such request that this defendant, to the best of its ability, furnished said cars within a reasonable time, and you further believe and find that this defendant exercised ordinary care on its part to transport said hogs over its line of road and to deliver the same to its connecting carrier within a reasonable time, and you further find and believe from the evidence that this defendant exercised ordinary care on its part to feed and water and rest said hogs while in this defendant's possession, and if you further find

and believe from the evidence that this defendant was not guilty of negligence in putting water into the cars in question or in drenching said hogs, then you will find for this defendant, and so say by your verdict."

[1, 2] The argument is that the testimony of appellant is sufficient to the extent to raise the issue that it furnished the cars within a reasonable time, and that it transported the said shipment with reasonable dispatch under the circumstances, and that it exercised ordinary care in feeding and watering the hogs and that, since appellee's complaint was substantially that the shipment was damaged by reason of the negligence of appellant as to such matters, the latter had the right to have the facts grouped, as set forth in the special charge, and to have the jury pass upon the same affirmatively. The rule contended for with reference to the omission of requested instructions, where the record is in such condition as that the affirmative issue, in favor of the defendant in cases of ordinary care, and in any litigation where applicable, is well settled in this state. The Supreme Court, in the case of Yellow Pine Oil Co. v. Noble, 101 Tex. 125, 105 S. W. 318, applied the rule as to the affirmative presentation of the issue for the defendant to the extent that a special charge affirmatively presenting in detail the elements of defense should not be denied, though the general charge of the trial court, however, only in a general manner affirmatively presented the same defense. Also see Railway Co. v. Taylor, 162 S. W. 969, and cases cited. However, in this case, after a careful consideration of the record as to the negligence of the railway company, relative to the transportation of the particular shipment, without detailed analysis of the facts and the inferences derivable therefrom, we are convinced that, considering the main charge of the court, in view of the cogency, and almost conclusive effect, of the testimony exhibiting the negligence of the initial carrier, that the omission of the special charge submitted by the appellant was not calculated in the slightest to affect the jury's verdict.

[3, 4] The more important question in this case is raised by the third assignment of error, on account of the submission by the trial court to the jury of plaintiff's special charge No. 1, which charge is as follows:

"Gentlemen of the jury, you are instructed at the request of the plaintiff that, if you find and believe from the evidence that the hogs in the shipment in question were held in the cars for an unreasonable length of time without being unloaded for food, water, and rest, and that such act was due to the negligence, if any, of the defendants, or either of them, and that by reason thereof the said hogs sustained injury thereby, then you will find for the plaintiff such damages, if any, as you may find from the evidence he sustained by reason of such negligence, if any, in respect to any of the matters submitted to you in the court's main charge, and you will assess the damages against the particular defendant responsible therefor, as directed in the said main charge."

Eliminating the element in the case of the failure upon the part of the appellant to procure the single-deck cars, the record shows that the swine were something like 75 hours in course of transportation of a distance of 281 miles, and were not unloaded for feed, water, or rest at any point during that period. The appellee Hill accompanied the hogs from Artesia, N. M., to Roswell, where the delay of 24 hours occurred, and, on account of the delay, left the shipment at that place by different transportation for Claude. The justification by appellant of its failure to comply with the federal law requiring stock to be unloaded for feed, water, and rest is presented in its brief in the following manner:

"Regulation 44 of the Bureau of Animal Industry, among other things, provides that public stockyards shall be considered infectious and no interstate movement of swine therefrom shall be made for feeding or stocking purposes. * * * Swine that are not diseased and have been merely exposed by being in the yards may be shipped interstate to a recognized slaughtering center for immediate slaughter. Where, however, a part of the yard is set apart for the reception of uninfected shipments of swine and is kept free of infection, swine may be shipped interstate from the uninfected portions thereof without restriction. * * *"

Regulation 45, as quoted in the brief, applicable to this question, provides:

"That cars that have contained interstate shipments of swine shall not be removed until the inspector has ascertained the condition of the live animals and either released the cars or given notice that they shall be cleaned and disinfected. * * *"

These particular hogs are not shown to have been exposed to any disease, nor to have been infected in any manner. The cars in which the shipment was made were cleansed and disinfected before the transportation began, and, as presented in this brief, without more, we are inclined to think that the mere proof of the regulations of the Bureau of Animal Industry, as therein exhibited, is not a sufficient defense of a violation of the federal law. This federal statute, as amended and approved June 29, 1906 (34 Stat. 607, c. 3594 [U. S. Comp. St. 1913, §§ 8651–8654]) provides:

"That no railroad * * * whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed * * * (in interstate commerce) * * * shall confine the same in cars, * * * of any description for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented by * * * unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight. * * *"

There can be no question in this record of the shipper assuming any duty, as applicable to the direct contention, for the reason that the railway company, during the course of transportation, refused to unload the hogs for feed, water, and rest, upon the ground that the regulations mentioned prevented it from so doing.

In a civil case a violation of the Twenty-Eight Hour Law "is negligence per se, rendering the railway company liable to the shipper for resulting injuries to animals." 6 Cyc. p. 439; Reynolds v. Railway Co., 40 Wash. 163, 82 Pac. 165, 111 Am. St. Rep. 883; Railway Co. v. Heggie, 86 Ga. 210, 12 S. E. 363, 22 Am. St. Rep. 453.

The primary purpose of the act, as exhibited by the title of the same, is "to prevent cruelty to animals in transit"; its declared intent being "to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon the contingencies hereinbefore stated." Same statute; Railway Co. v. U. S., 220 U. S. 94, 31 Sup. Ct. 369, 55 L. Ed. 384.

It is also particularly to be noted that the confinement is not to occur, "unless prevented by * * * unavoidable causes, which cannot be anticipated or avoided by the exercise of due diligence and foresight." While not made clear by appellant, except that it presents a general justification by virtue of the regulations of the Bureau of Animal Industry, we presume the contention is that any stock pens in which the hogs would have to be unloaded, and again reloaded, en route, provided for that purpose by the carrier, would be public stockyards within the purview of the regulation, and that no interstate movement of swine therefrom should be made for feeding or stocking purposes. Regulation 44. The same regulation provides, however:

"Where a part of the yard is set apart for the reception of uninfected shipments of swine, and is kept free of infection, the swine may be shipped interstate from the uninfected portions thereof without restrictions."

As stated, the beginning of this particular shipment was not from public stockyards, but was from private pens, deducible from the testimony.

As to the unloading and reloading of the swine en route, we presume that the further contention of appellant is, by virtue of regulation 45, that these cars having contained interstate shipments, that said cars could not be removed, nor could the hogs be reloaded in the same, until some inspector had ascertained the condition of the live animals and either released the cars while en route or gave notice that they should be cleansed and disinfected. The particular cars had already been disinfected. There is no showing by the railway company in regard to uninfected pens, or, if they could not provide pens for the purpose of transportation, there is no showing why provision could not have been made. The railway company had accepted the hogs for transportation—true, an interstate shipment —and, though a duty is not generally devolved upon a carrier outside the scope of transportation, we are not able to say that it may show a justification of a violation of this law by merely presenting regulations 44

and 45, and by merely saying, if the hogs had been unloaded at Roswell or at any other point for the purpose of complying with the law, that they could not have reloaded them on account of this regulation without some testimony precluding anticipation of such result as a cause justifying the violation of the law. "The cause, in order to justify the excessive confinement on the cars, must be one which cannot be anticipated or avoided under the terms of the statute, by the exercise of due diligence and foresight," and, as to the particular question, this due diligence is not devolved upon the shipper, but is incumbent upon the carrier.

Starting with the premise that it was the duty of the carrier to comply with the act, as an incident to transportation, which, if not done, is negligence per se, and which cannot be excused "except upon the contingency" mentioned in the act, we think it is also its duty in this instance to show as an avoidable cause of exoneration that it could not have complied with the regulations of the Bureau of Animal Industry. Under this condition, the giving of plaintiff's special charge we do not consider as error.

There is no other assignment which we think is sufficient to require discussion, and, upon the whole, we think the cause should be affirmed; and it is so ordered.