## Yellow Pine Oil Company v. Anna Noble.

### No. 1739. Decided November 20, 1907.

**Charge—Applying Law to Facts—Master and Servant.**

   Requested instruction applying the law to the specific facts, on the issue as to whether the servant, an oil gauger killed by escape of poisonous gases while on top of an oil tank, was engaged at the time in discharging the duties for which he was employed, held improperly refused, though the principle of law, generally stated, had been embraced in the charge given. (Pp. 127–128.)

Error to the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

Mrs. Noble sued the Oil Company and recovered judgment which was affirmed on defendant's appeal. Appellant thereupon obtained writ of error. The case on certified questions is reported in 100 Texas, 358.

*Greer & Minor* and *W. E. Miller,* for plaintiff in error.—The appellant having pleaded, and there being evidence to sustain the same, that deceased violated the rules and instructions of appellant in going upon said tank alone, and by reason thereof met his death, and the charge of the court having failed to properly submit this issue to the jury, there was error in refusing to give the requested charge. Yellow Pine Oil Co. v. Noble, 100 Texas, 358.

*Jas. A. Harrison,* for defendant in error.—All parts of a charge must be construed together, and if the charge as a whole fairly presents the law on the issues involved it is not subject to criticism.— International & G. N. Ry. Co. v. Stewart, 57 Texas, 170; Jacobs v. Hawkins, 63 Texas, 3; Kauffman v. Babcock, 67 Texas, 243; Texas Mex. Ry. Co. v. Douglass, 73 Texas 331; Brotherton v. Weathersby, 73 Texas, 473; Rost v. Missouri Pac. Ry. Co., 76 Texas, 173; St. Louis, S. F. Ry. Co. v. McClain, 80 Texas, 92; San Antonio & A. P. Co. v. Corley, 26 S. W. Rep., 904; Citizens' Ry. Co. v. Creasey, 27 S. W. Rep., 945; Decatur Cotton Seed Co. v. Johnson, 35 S. W. Rep., 951.

MR. JUSTICE BROWN delivered the opinion of the court.

For herself, her minor children and the mother of the deceased, Anna Noble instituted this suit in the District Court of Jefferson County to recover damages from the Yellow Pine Oil Company for the death of her husband, Wash. L. Noble, who, she alleged, lost his life while in the employ of the Yellow Pine Oil Company at Beaumont in the capacity of gauger of oil sold by the said Oil Company and which was to be delivered through a pipe line

into tanks.   It was alleged that in the discharge of his duty as gauger it was necessary for Noble to go upon the oil tanks and, while upon one of the tanks discharging the duty of his employment, he lost his life from the effects of gas which escaped from the said tank through the negligence of the Yellow Pine Oil Company in failing to furnish to Noble a safe place to perform the work for which he was engaged.   The evidence shows that the tanks of the Oil Company were not properly constructed and that it was very dangerous to go upon them at all.   Noble was found in a dying condition on top of one of the tanks during the first night of his employment. He died from the effects of the gas which escaped from the tank.   The only evidence that we find in the record as to the scope of Noble's employment is in the following statement of F. E. Carroll, manager for the Yellow Pine Oil Company, who testified that his company was delivering oil through a pipe line into tanks for the Sabine Oil & Marketing Company, which had to be gauged after its delivery, and his company needed a man to see to the gauging of the oil.   Mr. Noble was recommended and introduced to the witness by one Mr. Bartlett.   From the testimony of Carroll we copy as follows: "Having made a contract with the Sabine Oil & Marketing Company I was looking for someone to look after our interests out there, and Mr. Bartlett told me I could get Mr. Noble to work for us he thought.   Mr. Bartlett introduced Noble to me.   I had spoken to him prior to meeting Mr. Noble about getting someone to look after our interests and he told me about Mr. Noble. Mr. Bartlett did not make any remarks about Mr. Noble other than that he would make a good man, and one that I could rely upon. Mr. Noble was employed by me to see that we got the proper gauge in the tanks, and I instructed him that it was for this purpose I was employing him.   I cautioned him about the danger from the gas. I was at the well that we were going to flow the oil from at the time I spoke to him about the danger from the gas.   Necessarily the gas pressure would have to be very strong for the well to flow the oil down those tanks; it was quite a distance, probably half a mile or more, and of course, it required very great natural pressure for the well to flow the oil down to the tanks, as I have stated before, and it was at that time, while I was discussing this fact with him, that I cautioned him about the gas.   I told him the gas would come through the pipe line into the tank and was very dangerous.   He said he understood that, and that it required a great deal of gas pressure to flow the oil into the tank.   I warned Mr. Noble very pointedly about the gas coming from the tank, and about being careful.   I told him that I had been gased myself on several occasions; that I had been knocked out twice, and on several occasions had my eyes badly gased, and that it had been done by this well; and I told him it was very dangerous to gauge oil around that tank, and also told him to be sure and go with someone else when these tanks were gauged so that he could be taken away before any harm came to him in case he was ever gased.   Mr. Noble seemed to know about these tanks when I gave him these warnings, and he said he would be very careful, and seemed to be very cautious.   I gave him positive in-

structions that it was not his business to attend to the flow of oil. He was not to cut off the oil. It was his duty only to watch the gauging of the tanks, and it was only his duty to be there and see that we got the proper gauge." Witness said no other person was present when the contract was made with Noble and that Noble was not informed as to the bad condition of the tanks but was warned as to the danger of the escaping gas which would come through the pipe line into the tanks. The witness testified that Noble was employed as a night man and that the company had no man to work there in the day time.

The Oil Company requested the court to give to the jury this charge, which was refused: "You are further instructed that the defendant, the Yellow Pine Oil Company would only be liable for such injuries as the deceased may have received while engaged in the discharge of his duties, and within the scope of his employment; therefore if you believe from the evidence that the deceased was merely employed to witness and verify the gauges of oil, and was instructed not to gauge except in company of a gauger or a representative of the Sabine Oil & Marketing Company and further believe that he was not engaged in the discharge of that duty in company with such gaugers or representatives at the time of the alleged accident, you should find a verdict in favor of defendant; for the defendant would not be liable for an injury occurring while the deceased was doing, or trying to do, something he was not employed to do; or for an injury occurring while he was violating the instructions as to the manner in which he should gauge the oil. If you should further believe that such disobedience contributed to his injury, he can not recover herein, and you will find for the defendant." In the main charge the court instructed the jury as follows: "On the other hand, if you believe from the evidence that the duties of the deceased's employment did not require him to go up on top of said tank at the time of his death, . . . you are instructed that you should return a verdict for the defendant." "You are further instructed that if you believe from the evidence that the said Washington Lee Noble at the time of his death had gone upon said tank for any purpose not embraced in the contract of hiring between him and the defendant, then you will find a verdict for the defendant." A verdict was returned by the jury in favor of the plaintiff against the defendant below for the sum of $5,000 upon which judgment was entered by the trial court and was affirmed by the Court of Civil Appeals.

The evidence of Carroll, copied above, was sufficient to raise the issue that at the time he received the injury which caused his death Noble was not engaged in the discharge of the duty for which he was employed by the Oil Company. The charges given by the court in a general way instructed the jury upon the issue, but the character of the evidence upon which the plaintiff in the case relied to show the nature of Noble's employment and that he was engaged in the discharge of its duties was such as to make the special charge requested by the defendant proper to be given by the court and really necessary to present the defense which the Oil Company relied upon. It was important to the Oil Company that the facts detailed by its

witness should be grouped and thus presented calling attention of the jury to the facts upon which it relied to sustain the defense.

Under the testimony of Carroll, Noble had no duty ·to perform upon top of the tanks of the Oil Company, except to see that the gauging done by the Sabine Oil & Marketing Company was proper and that the Yellow Pine Oil Company's rights were protected therein. The defendant relied upon the fact that Noble was not in the discharge of his duties upon the top of the tank when he received the injury from which he died. If, as stated by the witness Carroll, Noble was only to see that the gauging was correctly done and to guard the interest of his employer, and was in no way charged with the duty of cutting off the oil or in any way managing the tanks, then it could not have been that he was upon the top of the tank in discharge of any such duty in the absence of · any employe of the Sabine Oil & Marketing Company, because if he had undertaken to do the gauging himself his work would not have been of any benefit to his employer for the receiving company would not have been bound thereby; therefore, if it be a fact that Noble was alone when he received his injury, no employe of the Sabine Company, charged with the duty of gauging the oil, could have been with him, and, in the absence of such employe, he could not have been in the discharge of the duties of his employment. The circumstances show that Noble was alone at the time he was gased. Carroll testified that there was no one present when he made the contract with Noble, therefore, none of the witnesses who testified for the plaintiff could have known of the terms of the contract; in fact, none of them claim to have been present or pretended to state the terms of the contract between the parties. There are some general statements of what the duties of Noble were, but, as we understand the evidence, it is based upon the assumption that he was employed as a gauger for the Yellow Pine Oil Company, and, being a gauger, his duties would be to perform certain acts detailed by the witnesses.

From this state of the evidence it does not appear conclusively that upon another trial the defendant in error may not produce evidence to show the terms of the employment of Noble to be such as to justify his presence on the oil tank in discharge of his duty at the time of his injury, therefore the judgments of the District Court and Court of Civil Appeals are reversed and the cause is remanded.

*Reversed and remanded.*