SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY ET AL. V. KEYS & CASEY.

Decided May 13, 1908.

1.—Electric Wires—Negligence—Act of God—Lightning.

Evidence considered in case of animals killed by contact with a telephone wire burned and broken by a stroke of lightning and dangerously charged by falling across a trolley wire, and held to show a case of injury by act of God, unaccompanied by negligence, and in which a peremptory instruction in defendant's favor should have been given.

2.—Same—Insulation—Proximate Cause.

No negligence appeared from the failure of an electric car line to have its trolley wires protected by insulating covering, the necessary conditions of their use making this impossible; nor from a like failure by the telephone company, where such insulation, being ineffective when wet, would not have prevented the happening of the accident in the storm.

Appeal from the County Court of Bell County. Tried below before Hon. W. R. Butler.

*McLaurin & Wozencraft, D. A. Frank* and *W. H. Reid, Jr.,* for S. W. Tel. & Telephone Co.

*G. M. Felts* and *Jas. P. Kinnard,* for Belton & Temple Trac. Co.— The court should have charged the jury peremptorily in favor of the defendants, failing in which it should have set aside the verdict of the jury and given the defendants a new trial. (a) Evidence not sufficient: Missouri Pac. Ry. v. Somers, 78 Texas, 439; Easton v. Dudley, 78 Texas, 239; Chandler v. Meckling, 22 Texas, 37; Gulf, W. T. & Pac. Ry. v. Abbott, 24 S. W., 299; Cherry v. Butler, 17 S. W., 1090; Wipff v. Heder, 41 S. W., 166; Short v. Kelley, 62 S. W., 944; International & G. N. Ry. v. Halloren, 53 Texas, 55. (b) Surmise of negligence will not support verdict: Joske v. Irvine, 91 Texas, 582; Western U. Tel.

Co. v. Kendzora, 77 Texas, 257; Galveston, H. & S. A. Ry. Co. v. Faber, 77 Texas, 153; Texas & Pac. Ry. Co. v. Shoemaker, 98 Texas, 451; Missouri Pac. Ry. Co. v. Porter, 73 Texas, 304. (c) On inevitable accident: Gulf, C. & S. F. Ry. Co. v. Compton, 38 S. W., 220; Southwestern Tel & T. Co. v. Ingrando, 27 Texas Civ. App., 400; 1 Thompson on Negligence, sec. 14, and note 44; 1 Thompson on Negligence, secs. 73, 74, 75, 738; Galveston, H. & S. A. Ry. Co. v. Crier, 100 S. W., 1177; Gulf, C. & S. F. Ry. Co. v. Darby, 29 Texas Civ. App., 229; International & G. N. Ry. Co. v. Bergman, 64 S. W., 999; Fentiman v. Atchison, T. & S. F. Ry. Co., 44 Texas Civ. App., 455.

*A. L. Curtis* and *Winbourn Pearce,* for appellees.—The evidence introduced upon the trial of this cause was fully sufficient to sustain the verdict of the jury, and the judgment of the court. 10 Cyc., 889, 890; 15 Cyc., 471, 474; 14 S. W., 863; 76 S. W., 935; 55 S. W., 202; 56 S. W., 153; 65 S. W., 78; 73 S. W., 654; 71 S. W., 628; 37 S. W., 851; 74 S. W., 289; 55 S. W., 396; 33 L. R. A., 798; 64 L. R. A., 101; 26 L. R. A., 810; 22 L. R. A., 635.

RICE, Associate Justice.—This was a suit brought by Keys & Casey, partners, against the Southwestern Telegraph & Telephone Company and the Belton & Temple Traction Company, defendants below, in the county court of Bell County on the 21st of March, 1907, for the recovery of damages in the sum of $400 for the loss of two horses, which they alleged were killed on the 16th of March, 1906, while being driven on Pearl Street in the city of Belton, by coming in contact with a wire of said Telephone Company which had fallen across the trolley wire of the defendant Belton & Temple Traction Company into said street.

A jury trial resulted in a verdict and judgment for plaintiffs against both defendants in the sum of $200, from which judgment both of said defendants have prosecuted this appeal.

Plaintiffs alleged that the Southwestern Telegraph & Telephone Company, one of the appellants, was engaged in the business of operating a local and long distance telephone system into and through the city of Belton, and for such purposes maintained posts and wires upon and across the public streets of said city; that the defendant, the Belton & Temple Traction Company, was engaged in the business of operating a trolley car system in the city of Belton and through the streets thereof, and for such purpose it likewise maintained its posts and wires upon and across the public streets of said city, and that the wires of both defendants extended along and across Pearl Street; it was alleged that it was the duty of both defendants to so insulate and maintain guard wires and rails, and otherwise guard all points where said wires extend near to and across one another, so that such other wires than the trolley wires could not become charged with electricity. Plaintiff further alleged that the defendants negligently failed to do so; that the Telephone Company negligently permitted its wires to become loose and insecurely fastened and detached from its poles, so that the same were permitted to and did fall down and upon a live wire of the Traction Company, and thence into and upon Pearl Street, and that it negligently maintained at said point weak, dangerous and rusted wires, by reason of

which the same broke and fell across said live wire and into the street; that on account of said negligence on the part of defendants, two of plaintiffs' horses, while being driven along Pearl Street on the night of March 16, 1906, came in contact with the telephone wire which had fallen across said street, and were immediately killed by reason thereof.

The Telephone Company answered by general denial and special exceptions, and also a special answer, alleging, among other things, that upon the dates mentioned in plaintiffs' petition all of its wires and poles upon the streets and alleys of the city of Belton were put up and maintained in a skillful and workmanlike manner; that said wires were of standard size and weight and of the best grade of galvanized iron wire, such as was in use by all well regulated telephone companies for the same or similar purposes; and that every precaution was used by it for the safety both of its own employes and patrons and of the general public; and specially denied that it negligently and carelessly permitted its wires to become rusted or loose and insecurely fastened and detached from its poles upon Pearl Street or any part thereof, and specially denied that any of its wires were permitted to fall down upon and across any live wire of the Belton & Temple Traction Company, and thence into and upon any portion of Pearl Street and on the ground thereof, and it further specially denied that it maintained at any point on said street in said city any wires which were weak, dangerous or rusty, but on the contrary alleged that all of its wires along and over said Pearl Street, and especially at the point alleged by the plaintiffs as the place of the accident to their team was the best quality of galvanized wire, strung at a safe distance above said trolley wire, and that it properly maintained and inspected the said wires, and if plaintiffs' horses were damaged, as alleged, then it charges that said damages, if any, were due to an inevitable accident or the act of God, over which it had no control and for which it was in no wise responsible. Defendant shows that said act of God consisted in this, that on the night of the alleged accident, a heavy rainstorm began to fall in the city of Belton just before dark, and continued with great fury until 9 o'clock p. m.; that during said storm a fierce gale was blowing and severe and constant lightning was prevailing for the full period of the rain, and that one of the heaviest hailstorms ever experienced in Bell County commenced and continued for the space of thirty minutes without interruption, destroying fruit, breaking window lights and doing other damage in said city; that during said rain and thunderstorm, one of its wires, properly stretched across Pearl Street in said city of Belton and carefully maintained by it, was broken in two by the force of said storm, the wind, hail and lightning thereof, and was thereby caused to fall into the street, notwithstanding the same was properly strung across said street at a safe distance above said trolley wire, and was in good working order at all times during the day of the alleged accident, and up to within a short time before said accident; that during said storm its said wire across said street was struck by lightning and burned and broken in two at a distance of several feet from defendant's poles on the east side of said street at a point where there was no contact of wires and in the open air, approximately 25 feet above the level of said street, thereby causing the end of said wire extending in a northwesterly direction to

fall down and upon and across the trolley wire and into said street, that the breaking thereof occurred, either simultaneously or immediately preceding the accident to plaintiffs' team, if any, and this defendant did not know of said breaking thereof at the time of said accident, if any, nor had said wire been down a sufficient length of time to put it upon notice of the condition thereof. It further alleged that it had in its employ a skillful and competent inspector, who in a few minutes after said accident occurred was upon the scene and immediately cleared the street of all dangerous obstructions; that it was in every way cautious and prudent and in no way negligent, nor was it liable for the accident to plaintiff's team, if any, but that the same happened, as above stated, because of an act of God, etc.

The other appellant, the Belton & Temple Traction Company, after general demurrer, special exceptions and general denial, plead specially that it was an interurban traction company, maintaining and operating a railway between the cities of Belton and Temple for the purpose of carrying passengers between said towns, securing its power therefor through electricity produced in its power house at Midway, said electricity being conducted through an overhead trolley wire, extending along and over its track at a distance of about 15 or 18 feet above the same, and the electricity for propelling said cars was obtained therefrom; that in order to propel its cars along said line it was necessary for its trolley poles and connections to come in direct contact with said overhead trolley wire at all points, making it impossible for said trolley wire to be insulated; it further alleged that its line on and along Pearl Street in the city of Belton at the point where it is alleged the accident occurred, was maintained and operated in a careful and skillful manner. Further specially answering, it alleged that the accident was inevitable and unavoidable and the act of God, in that on the night of the alleged injury there raged a very severe hail, electrical and thunder storm in the city of Belton, and that in some manner unknown to it, lightning struck the telephone wire, burning the same in two, causing the same to fall down and across its trolley wire, and causing a connection therewith, or that the accident occurred in some other manner to it unknown, and that the injury was without negligence or fault upon its part.

Appellants insist that the court erred in refusing to give a peremptory instruction requested by them to the effect that the injury was caused by an inevitable accident or act of God, and therefore to find for defendants. They likewise insist that the court erred in overruling their motion for new trial, because the evidence showed that the horses were killed on account of an inevitable accident or act of God.

Briefly stated, the evidence shows that at the time of the injury the appellants were maintaining and operating along and over Pearl Street in the city of Belton, the one an interurban railway company, and the other a telephone system; that the telephone wires were stretched diagonally across Pearl Street, where the accident occurred, some four or five feet above the trolley wire of the Traction Company, which last extended along said street; that the wires, poles and all the appliances for the successful maintenance and operation of the business of said respective companies were constructed of good substantial material, were in fine condition and such as were in general use for said purposes; that

the wires of neither company at said point along Pearl Street were insulated. It was shown that there were no guard wires above the Traction Company's wires, but the evidence shows that it was more dangerous to use what are termed guard-wires than not to do so, and that the system of guard wires for protection had been abandoned in several of the larger cities. It was shown that the trolley wire of the Traction Company could not be operated if it were insulated, for the reason that the poles have to come in direct connection with said trolley wire to obtain the requisite amount of electricity to propel the cars; and that the wires in use by the Telephone Company, while not insulated, were of the best galvanized wire, and such as are in common use, and that insulated wires, when the insulation is wet, in the event of coming in contact with another live wire, would afford very little, if any, protection, because in such condition the insulation is a good conductor of electricity. That on the night in question, while plaintiffs' team of horses were being driven to a hack along Pearl Street, a furious rain, wind and electrical storm was prevailing, which began a little before dark on said evening, and continued for several hours into the night; that at the time of the accident the lightning was vivid, incessant and severe, and the storm of unusual character, and that the horses were suddenly killed by coming in contact with the wire of the Telephone Company, which had fallen across the Traction Company's wire and into the street; that about the time of the accident one Wilmer, inspector of said Telephone Company, as was his custom during an electrical storm, called its central office to ascertain if there was any trouble anywhere on the line, and failed to obtain any response therefrom. At this juncture, Mr. Mosher, at whose house he was boarding, and who was standing near the front door, told him that a wire was down right there in the street across the trolley wire, and said inspector directed Mosher to go into the street and keep anybody from passing that way, while he immediately got his tools, and within fifteen minutes after the discovery of this condition had fixed the same so that there was no further danger. The horses were then down in the street. It was shown that the wires of said defendant companies were in good condition on the evening of the day of the accident, and that the telephone wire, at a point immediately above the Traction Company's wire, was burned in two. It was in evidence that the striking of a telephone wire by lightning would burn the wire in two at the point of contact, and that an inspection of the poles and wires and other appliances of the Telephone Company at said point on the next morning after the accident showed that they were all intact and in good shape, except where it had burned in two immediately above the Traction Company's wire, as above stated. It appeared that the storm was a very severe one, the hardest experienced in that section of the country for many years, and was accompanied by a heavy downpour of rain, a severe hailstorm, strong wind and incessant lightning. It is true that it is shown that it is usually safer to insulate telephone wires, but it was also shown that even if these wires had been insulated on the occasion in question, that it would not have prevented the injury complained of.

We believe from the evidence that the killing of the horses was due to the striking of the wire by lightning, and that the same was the proximate cause of their death, and that the negligence, if any, of the defend-

ants as alleged, to wit: a failure on the part of the Telephone Company to insulate its wires, and a failure on the part of the Traction Company to maintain guard wires, did not constitute concurrent negligence on its part, and that there was no causal connection between the two. This brings the case within the well settled rule of law announced in the cases of International & G. N. Ry. Co. v. Bergman, 64 S. W., 999; Gulf, C. & S. F. Ry. Co. v. Darby, 28 Texas Civ. App., 229; Hunt Bros. v. Missouri, K. & T. Ry. Co. of Texas, 74 S. W., 69; Fentiman v. Atchison, Topeka & Santa Fe Railway Co., 44 Texas Civ. App., 455; Gulf, C. & S. F. Ry. Co. v. Compton, 38 S. W., 220; Southwestern T. & Telephone Co. v. Ingrando, 27 Texas Civ. App., 400; 1 Thompson Neg., sec. 14, note 44, and also secs. 73, 74, 75 and 738.

Believing that the accident in question was due to an inevitable accident and the act of God, which could not have been prevented, and that there was no concurring negligence on the part of appellants shown from the evidence, we are inclined to the opinion that the peremptory instruction requested by appellants should have been given in charge by the court to the jury.

Entertaining this view, it is not necessary for us to discuss any of the other numerous assignments of error presented by briefs of appellant, but for the error indicated, as well as the refusal of the court to grant a new trial on account of the insufficiency of the evidence to sustain the verdict, the judgment of the court below is now reversed and here rendered in behalf of appellants.

*Reversed and rendered.*