MAGNOLIA PETROLEUM CO. et al. v. RAY.
(No. 8383.)

(Court of Civil Appeals of Texas. Ft. Worth. May 27, 1916. On Rehearing, June 24, 1916.)

1. MASTER AND SERVANT ☞107(3)—MASTER'S DUTY—SAFE PLACE TO WORK—DANGEROUS CHARACTER OF WORK.

The general rule requiring the master to exercise ordinary care to furnish a reasonably safe place to work has no application to a car inspector, employed to see whether cars were in a safe condition for use by the road and to remedy any defects in them which he might discover since the character of his employment necessarily required him to go upon cars that were in an unsafe and dangerous condition; the reason being that no negligence can be charged to the master when the servant voluntarily contracts to assume the very risk of which he complains.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 201, 255; Dec. Dig. ☞107(3).]

2. MASTER AND SERVANT ☞203(1)—ASSUMPTION OF RISK—MASTER'S NEGLIGENCE.

The defense of assumption of risk implies negligence on the part of the master creating liability for the damages sustained, unless such a right of action is destroyed by the defense; and, where the common-law rule of allowing the defense of assumed risk where the master has been guilty of negligence is charged by the statute, such defense has no place in a case where there has been no negligence on the part of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–540, 542, 543; Dec. Dig. ☞203(1).]

3. EXPLOSIVES ☞8 — MASTER AND SERVANT ☞111(1)—INJURY—CARE REQUIRED—EXPLOSION OF TANK CAR.

A railroad owed the duty to its employés, other than its car inspector, and to strangers whose presence might reasonably be expected sufficiently near an oil tank car to receive injury from an explosion thereof, to exercise ordinary care to see that the car was in a proper condition to avoid such explosion.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. ☞8; Master and Servant, Cent. Dig. §§ 215, 255; Dec. Dig. ☞111(1).]

4. MASTER AND SERVANT ☞107(3) — SAFE PLACE TO WORK — CAR INSPECTOR — LIABILITY.

There may be unusual circumstances rendering the situation of a car inspector extraordinarily hazardous, and, when he is excusably ignorant thereof, the master may be liable for an injury resulting therefrom through a negligent failure to remedy such conditions or to inform him thereof.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 201, 255; Dec. Dig. ☞107(3).]

5. MASTER AND SERVANT ☞258(13)—ACTION FOR INJURIES — PETITION — SAFE PLACE TO WORK—INJURY TO CAR INSPECTOR.

A petition in a car inspector's suit for injury from the explosion of a tank car loaded with gasoline and naphtha, not alleging that he was inexperienced in such work or was ignorant of the dangers incident thereto, or that defendant was negligent in not warning him of the dangers before directing him to inspect the car, did not show any such unusual facts or circumstances as to exempt him from the general rule applicable to servants employed to repair defective machinery or other equipment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 828; Dec. Dig. ☞258(13).]

6. NEGLIGENCE ☞62(1) — INTERVENING NEGLIGENCE—"PROXIMATE CAUSE."

Intervening agencies between an act or omission constituting negligence and an injury do not preclude a finding that the negligence was the "proximate cause" of the injury, if it can reasonably be said that the injury was the natural and proximate result of such negligence and that, in the light of the attending circumstances, some such injury ought reasonably to have been anticipated as the probable result.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76, 78; Dec. Dig. ☞62(1).

For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

7. **MASTER AND SERVANT** ⬦286(13)—INJURY TO SERVANT—QUESTION FOR JURY—ANTICIPATION OF INJURY.

Whether or not an injury to a car inspector, from the explosion of a tank car in which he was trying to remedy a defect, ought reasonably to have been anticipated as a probable result of the road's negligence, in allowing a defective tank car to remain in its yard, was for the jury, unless, by reason of an absence of proof, or conclusiveness of proof to sustain the affirmative of that issue, a peremptory instruction thereon would be warranted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1020; Dec. Dig. ⬦286(13).]

8. **TRIAL** ⬦203(3) — INSTRUCTION — DEFENDANT'S THEORY OF THE CASE.

In an action for injury to a car inspector, from the explosion of a tank car loaded with gasoline and naphtha, which it was alleged defendant railroad negligently permitted to remain in its yard in a defective condition, defendant was entitled to an instruction affirmatively presenting the group of facts upon which it relied to refute the charge of negligence, such as an instruction that, if the injury resulted from a pure accident not proximately caused by the negligence of any one, plaintiff could not recover.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 478, 479; Dec. Dig. ⬦203(3).]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by R. S. Ray against the Magnolia Petroleum Company, the Corsicana Petroleum Company, the Ft. Worth & Denver City Railway Company, and the Houston & Texas Central Railway Company. Judgment for plaintiff against defendant Houston & Texas Central Railway Company, and it appeals. Reversed and remanded for another trial as between plaintiff and such defendant, leaving the other part of the judgment undisturbed.

Thompson & Barwise and G. W. Wharton, all of Ft. Worth, Baker, Botts, Parker & Garwood, of Houston, and R. M. Rowland, of Ft. Worth, for appellant. McLean, Scott & McLean, of Ft. Worth, for appellees.

DUNKLIN, J. A tank car was loaded with a mixture of gasoline and naphtha at Electra, Tex., and consigned for shipment to Corsicana, Tex., over the Ft. Worth & Denver City Railway to Ft. Worth, and from Ft. Worth to Corsicana over the Houston & Texas Central Railway. After reaching Ft. Worth it was delivered to the Houston & Texas Central Railway Company at 3:30 o'clock p. m. on the 14th day of March, 1915. A few minutes after 6:30 o'clock p. m. of the same day, R. S. Ray, a car inspector of the Houston & Texas Central Railway Company, was directed by Fife, the general yardmaster of the Houston & Texas Central Railway Company, to inspect the car, the yardmaster telling him at the time that the car was leaking. Ray had just gone on duty when he received those instructions and proceeded at once to the car. When he reached it he found that gas was escaping from the edges of the dome cap in quantities sufficient to make a hissing noise. He and his helper, Pettigrew, then proceeded to examine the car. They both carried lanterns, but Pettigrew, upon instruction from Ray, extinguished his before he reached the car for fear of an explosion from the ignition of the escaping gas. Ray did not extinguish his lantern, but on account of the same danger he left it at a distance estimated at between 75 and 100 feet from the car. The dome cap of the car was screwed into the opening known as the manhole, approximately three feet in diameter. On top of the car were two valves called "pop-off" valves. The purpose of these valves was to allow the escape of gas that might accumulate in the car and thereby avoid an explosion. When the gas reached a certain tension inside of the car, the valves would be opened by such pressure, and after the relief of the pressure the valves would close. Fearing that the car might explode, Ray and Pettigrew ascended to the top of the car and tried to open these valves by hammering down on them with a bar of iron. They were unable thus to open the valves, and thereupon conceived the idea of unscrewing the dome cap from the manhole. After giving the dome cap a partial turn, which resulted in an increase in the escape of gas, they ceased further efforts and alighted from the car; Ray being of the opinion then that the pressure of gas would be relieved by the loosening of the dome cap, which had then been accomplished by himself and Pettigrew. Just as they had reached that conclusion, Clopton, another employé of the Houston & Texas Central Railway Company, who was engaged as an engine foreman, came on the scene and suggested that the dome cap be unscrewed farther. Ray himself declined to make any further efforts to do so, but his helper, Pettigrew, and Clopton ascended the car and gave the dome cap another turn, which resulted in an explosion, the force of which blew the dome cap off and shot a stream of liquid and gas to an estimated height of 100 to 150 feet in the air. In some manner this gas and liquid caught fire and severely burned Ray, who was on the ground near the car at the time.

Ray instituted this suit to recover for the injuries so sustained. The defendants in the suit were the Magnolia Petroleum Company, alleged to be the owner of the car, the Corsicana Petroleum Company, who loaded the car at Electra, the Ft. Worth & Denver City Railway Company, who transported it from Electra to Ft. Worth, and the Houston & Texas Central Railway Company. It was alleged that the Magnolia Petroleum Company, who owned and operated the car, owed the duty to see that the pop-off valves were constructed and maintained in a reasonably safe condition, but that said company negligently permitted said valves to become rus-

ty, corroded, and otherwise defective, and used the car in that condition for transporting high explosives; that if the pop-off valves were properly constructed and in proper condition for the car to be used in the transportation of gasoline, or any other explosive substance, such valves would automatically open whenever the pressure inside the car reached a stage of 12 pounds to the square inch, but that, by reason of the defective and corroded condition of those valves in that car, that result could not be attained. It was alleged that the Corsicana Petroleum Company negligently caused the car to be loaded at Electra with the highly explosive liquid without inspecting it to ascertain whether or not said pop-off valves were in proper condition, and negligently procured the same to be transported and delivered into the yards of the Houston & Texas Central Railway Company in that condition. It was alleged that the Ft. Worth & Denver City Railway Company negligently and carelessly delivered the car to the Houston & Texas Central Railway Company without making any inspection to ascertain the condition of the car and its contents, and that if a proper inspection had been made the defective condition of the pop-off valves would have been discovered and that the said railway company was guilty of negligence in failing to warn the Houston & Texas Central Railway Company, to whom it delivered the car, and the plaintiff, R. S. Ray, its car inspector, of the contents of the car and its defective and dangerous condition.

Plaintiff further alleged that at the time of the accident he was in the employment of the defendant Houston & Texas Central Railway Company in the capacity of car inspector in its yards in the city of Ft. Worth, and that the duties of his employment consisted of inspecting the cars in the yards of said company and ascertaining whether or not the same were in need of repairs and were in fit and proper condition. The allegations of negligence on the part of the Houston & Texas Central Railway Company are as follows:

"That it was then and there the duty of the defendant Houston & Texas Central Railway Company, to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to perform his work and to exercise a like degree of care to maintain the same in a reasonably safe condition. But the said defendant Houston & Texas Central Railway Company, its agents, and employés negligently and carelessly caused and permitted said car to come into its yards in the condition aforesaid, well knowing that plaintiff and others of similar employment would be working around and near said car. Defendant Houston & Texas Central Railway Company, its agents, and employés negligently and carelessly permitted said car, in its dangerous and defective condition with its contents aforesaid, to be and remain in said yards. That said car in its then condition with its contents aforesaid, being and remaining in said yards, rendered the place where plaintiff was required to perform his work dangerous and unsafe. And plaintiff alleges that the said defendant Houston & Texas Central Railway Company, its agents, and employés knew, or by the exercise of ordinary care could and should have known, of the defective and dangerous condition of said car, with its contents aforesaid, and in the light of the attending circumstances could and should have foreseen such injury and damage as plaintiff suffered as the natural and probable consequence thereof. That in all of said acts, the defendant Houston & Texas Central Railway Company was guilty of negligence which proximately caused all of plaintiff's injury and damage."

It was alleged that the negligence of each and all of the defendants was the proximate cause of the plaintiff's injury, and judgment was asked against each for the damages resulting to the plaintiff by reason of his injuries.

The trial was before a jury, who returned a verdict in favor of the two oil companies and the Ft. Worth & Denver City Railway Company in obedience to a peremptory instruction from the court; but a judgment was rendered in favor of the plaintiff against the Houston & Texas Central Railway Company for the sum of $13,750 upon evidence heard and a charge submitting the issue of liability of that railway company as a controverted issue, from which judgment that defendant has prosecuted this appeal.

The record does not show upon what theory the peremptory instruction was given in favor of the other three defendants, nor does it appear in the record that the plaintiff took any bill of exception to that instruction.

The car was loaded with 6,760 gallons of gasoline and 1,260 gallons of naphtha, the naphtha being mixed with the gasoline in order to reduce the vapor tension of the latter. According to the testimony of O. C. Baker, an employé of the Corsicana Petroleum Company, who had charge of the loading of the cars of that company, the car was a steel frame car, the body of which was tested to stand a pressure of 60 pounds to the square inch, and the pop-off valves were tested to stand a pressure of 12 pounds to the square inch. The car belonged to the Magnolia Petroleum Company, who sold its contents to the Corsicana Petroleum Company, and furnished the car to the latter company for the shipment of said contents. According to other testimony, which seems uncontroverted, the plugs in the pop-off valves could be raised by prizing them up with an iron bar and the valves were equipped with springs and screws by means of which the pressure inside of the car could be regulated; in other words, the valves could be so regulated that the pressure inside the car would exhaust through the valve whenever it reached a certain tension.

According to the testimony of the witness A. G. Craft, introduced by the defendant, who was joint car inspector for the different railroads in Ft. Worth, including the two defendant railway companies, the morning after the accident the dome cap of the car in question was again screwed into the manhole

and steam was inserted for the purpose of determining whether or not the pop-off valves were in proper condition. He testified that as the result of this test the plugs in the pop-off valves lifted and permitted the steam to escape when the pressure reached the stage of 20 or 22 pounds to the square inch, but not until it reached that pressure. This witness further testified, however, that with that pressure no steam escaped around the edges of the dome cap, his testimony as to the fact last stated being introduced by the plaintiff as tending to show that the pressure in the car at the time of the accident was greater than 22 pounds to the square inch. The car reached Ft. Worth and was delivered to the Houston & Texas Central Railway Company by the Ft. Worth & Denver City Railway Company at 3:30 o'clock p. m. on March 14, 1915, and A. G. Craft, the joint car inspector, testified that he inspected the car at the time of the delivery and heard no escape of gas therefrom, and discovered no defect in its condition, nor any evidence indicating any danger of explosion. As stated above, the accident happened shortly after 6:30 o'clock during the same afternoon.

After giving the usual definitions of ordinary care and negligence, the sixth and seventh paragraphs of the court's charge to the jury, in presenting the plaintiff's case against the Houston & Texas Central Railway Company read as follows:

"(6) You are instructed that it is the duty of the master to exercise ordinary care to furnish his servant with a reasonably safe place in which to perform his work and to exercise a like degree of care to maintain the same in a reasonably safe condition. A failure so to do is negligence.

"(7) Bearing in mind the foregoing definitions and instructions, if you find and believe from the evidence that on or about the 14th day of March, 1915, the defendant Houston & Texas Central Railway Company caused or permitted a certain tank car containing highly explosive and dangerous substance to be brought into its yards in the city of Ft. Worth, and that said car was in such condition as that said substance or substances escaped therefrom, and that in such condition it was dangerous and unsafe, and that the presence of same in said yards rendered the place where the plaintiff was working and required to be at work dangerous and unsafe, and the said Houston & Texas Central Railway Company, or its agents and employés, permitted said car to so remain in said yards in such condition; and if you believe and find from the evidence that said car, in its then condition, being and remaining in said yards rendered the place where plaintiff was working and required to work dangerous and unsafe, and you further find that said Houston & Texas Central Railway Company, its agents, and employés, knew or by the exercise of ordinary care should or could have known, of the dangerous condition of said car, if such was its condition, and you further find that said Houston & Texas Central Railway Company, its agents, and employés, knew or by the exercise of ordinary care should have known that the presence of said car in said yards in the condition you may find it was in rendered the place where plaintiff was required to work dangerous and unsafe, if you find that it did render such place dangerous and unsafe, and you further believe and find that said acts and omissions of said defendant company, its servants,

and employés, if any, were negligence, as that term has been heretofore defined, and you further find that such negligence, if any, was the proximate cause of plaintiff's injuries, if any, and you do not find for the defendant under other instructions herein given you, your verdict will be for the plaintiff, R. S. Ray, and against the defendant Houston & Texas Central Railway Company."

[1, 2] Error has been assigned to both of those instructions substantially upon the ground that the evidence did not warrant a recovery upon the theory of negligence in failing to provide the plaintiff with a reasonably safe place to work, or that it was guilty of negligence in failing to maintain the same in a reasonably safe condition, and we are of the opinion that those assignments must be sustained. According to the allegations in plaintiff's petition and the undisputed evidence, plaintiff was employed for the express purpose of inspecting cars in order to determine whether or not they were in a safe condition for use by the company. The evidence further shows that it was within the scope of the duties of plaintiff's employment to remedy any defects in the cars which he might discover upon inspection and which could be repaired by him. Plaintiff's employment necessarily required him to go upon cars that were in an unsafe and dangerous condition, for the purpose of determining and repairing that condition, and it is well established that the general rule given in the court's charge which requires the master to exercise ordinary care to furnish the servant with a reasonably safe place to work has no application to that character of employment under such circumstances. See S. A. & A. P. Ry. Co. v. Weigers, 22 Tex. Civ. App. 344, 54 S. W. 910; Wells Fargo Express Co. v. Page, 29 Tex. Civ. App. 489, 68 S. W. 528; 3 Labatt's Master and Servant (2d Ed.) §§ 924, 1176, and authorities there cited.

In Allen v. G., H. & S. A. Ry. Co., 14 Tex. Civ. App. 346, 37 S. W. 171, in which a writ of error was denied by our Supreme Court, the following was said:

"Ordinarily, the master owes his servant the duty of inspection or reasonable care in furnishing him safe and suitable means for performing his work. This rule has no reference to the safety and condition of the thing the servant is employed to repair or complete. As stated in Carlson v. Railway Co., 21 Or. 450, 28 Pac. 497: 'Where a servant is employed to put a thing in a safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in a safe condition and good repair for the purpose of such employment.'"

To the same effect are numerous decisions collated in notes to Forbes v. Gorman, 25 L. R. A. (N. S.) 321.

In many of the authorities announcing that the general rule requiring a master to furnish a safe place for the servant to work does not apply in such cases, it is stated that the servant assumes all such risks. The underlying principle of the exception, as we understand it, is that no negligence can be charged to the master when the servant vol-

untarily contracts to assume the very risk of which he complains; and, in the absence of negligence on the part of the master, the servant has no cause of action as a matter of course. The use of the expression in the authorities referred to, that the servant assumes the risk, is misleading, in that the defense of assumption of risk implies negligence on the part of the master creating liability for the damages sustained, unless such a right of action is destroyed by that defense. It is important to keep this distinction in mind, if the common-law rule of allowing the defense of assumed risk where the master has been guilty of negligence is changed by statute, as has been done in this state, and if that statute applies in the present suit. If there has been no negligence on the part of the master, then the defense of assumed risk has no place in the case.

[3] The appellant Railway Company owed the duty to its other employés and to strangers, whose presence might reasonably be expected sufficiently near the place of the accident to suffer injury from such an explosion, to exercise ordinary care to see that the car was in a proper condition to avoid such explosion. Appellant is a corporation and could discharge that duty only by employing some one to perform it, and it would be unreasonable to say that it owed the duty to see to it that the car which needed repairs was already in a safe condition before the servant employed to repair it was called on to perform that service.

[4] Of course, the master is not exonerated from all duties for the protection of the servant employed to remedy such defects. There may be unusual circumstances rendering the situation of the servant extraordinarily hazardous and of which circumstances the servant is excusably ignorant, and the master may be liable for an injury resulting therefrom through a negligent failure to remedy them, or to inform the servant thereof. For illustration: In Clark v. Johnson County Tel. Co., 146 Iowa, 428, by the Supreme Court of Iowa, reported in 123 N. W. 327, it was said:

"While it is true that a servant employed to make a dangerous place safe assumes the risk of the very danger which he undertakes to remove, he does not assume the risk of the method employed in doing such dangerous work if that method is unnecessarily hazardous in respects as to which the employé has no knowledge, provided that in these respects the employment could have been rendered less hazardous by the exercise of reasonable care on the part of the employer."

Other illustrations might be given, such as the negligent failure to inform an inexperienced servant of the dangers incident to repair work when his ignorance of such danger was known to the employer.

[5] Plaintiff alleged no such unusual facts or circumstances as would exempt him from the operation of the general rule applicable to servants employed to repair defective machinery or other equipments. His petition contained no allegation that he was inexperienced in such work, ignorant of the dangers incident thereto, that such ignorance on his part was known to appellant and that appellant was guilty of negligence in failing to warn him of such dangers before he was directed to perform the service. So far as appears from the pleadings and the evidence, the only employés whose duties required such work as plaintiff was doing at the time of the accident were car inspectors. The plaintiff and Craft, the joint car inspector, were charged with the same duties. The theory advanced in plaintiff's brief, and also in his pleadings, was that the defects and dangerous condition of the car were present at the time the car was delivered to appellant by the Ft. Worth & Denver City Railway Company and at the time Craft inspected it; and the evidence of Utley, the switchman who handled the car from the time it was received, to the effect that the car was emitting a hissing sound at that time and continuously up to the time of the accident, and the testimony of Malone, the yard clerk who checked the car, to the effect he heard the same noise emanating from the car about 5 o'clock in the afternoon of the date of the accident, is cited by appellee to establish that fact. If plaintiff had been called upon to perform the same service as soon as the car was received by appellant, and the same accident had then happened, clearly he would be in no position to claim liability on the part of the defendant for such injuries. If, instead of him, Craft had then attempted to perform the same service, exercising proper care, as the jury found the plaintiff did, and he had been injured, as plaintiff was injured, as a result of such defects, it is equally clear that he would have had no cause of action. If, in the performance of the service which plaintiff was performing on the occasion of the accident, he acted as a person of ordinary prudence would have acted under the same or similar circumstances, as found by the jury, then it must be presumed that Craft would have pursued the same course and would have suffered a like injury if he had discovered the alleged defects and had attempted to remedy them, when the car was first delivered to appellant by its connecting carrier. Upon what principle can plaintiff in the present suit insist that Craft should have suffered an injury rather than himself, and that appellant should respond in damages to him for Craft's failure to take that risk? It is difficult to perceive upon what theory the defendant would be liable to the plaintiff for the accident that did happen to him and would not have been liable to plaintiff, if, from the same causes, the same accident had happened immediately upon receipt of the car by appellant some three hours earlier than the time the accident did happen. If car inspectors were the only employés hired to inspect and repair such cars, and if the

187 S.W.—69

duties of their employment which they voluntarily assumed and contracted to perform, knowing the dangers and risks incident thereto, required them to inspect and repair cars in the condition the car in controversy was, then, in the absence of some extraordinary circumstance of the character suggested above, we fail to perceive any basis for a charge of negligence on the part of the employer predicated solely upon the fact that the car was a dangerous place to work.

By different assignments appellant contends that the alleged negligence on its part, upon which plaintiff based his suit, was not, as a question of law, the proximate cause of the injury, and that therefore the court erred in submitting to the jury any issue as a basis for a verdict in plaintiff's favor. By one of those assignments it is insisted that the evidence shows without controversy that the escaping gas was ignited by coming in contact with plaintiff's lantern, which he had left upon the ground near the car, and that his act in so leaving it was the proximate cause of his injury. By two other assignments it is contended that the act of Pettigrew and Clopton in unscrewing the dome cap was the proximate cause of the accident and injury, and that plaintiff in his pleadings had not alleged that Clopton and Pettigrew were guilty of negligence in so doing or that appellant was in any manner liable therefor.

The principal argument advanced in support of those assignments is, substantially, that each of those acts was an intervening agency causing the injury, wholly independent of the alleged negligence of appellant and wholly disconnected from it. Many authorities are cited in support of those assignments, such as T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Commercial Assurance Co. v. Gulf Refining Co., 174 S. W. 874; G., C. & S. F. Ry. Co. v. Shields, 9 Tex. Civ. App. 652, 28 S. W. 709, 29 S. W. 652; Newnom v. S. W. Tel. Co., 47 S. W. 669; S. W. Tel. & Tel. Co. v. Keys & Casey, 50 Tex. Civ. App. 648, 110 S. W. 767; Stone v. B. & A. Ry. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794.

[6] The foregoing conclusions upon assignments first discussed render it unnecessary to discuss these, but, in view of another trial, we deem it proper to suggest that intervening agencies between an act or omission constituting negligence and an injury does not preclude a finding that the negligence was the proximate cause of the injury, if it reasonably can be said that the injury was the natural and probable consequence of such negligence, and that in the light of the attendant circumstances some such injury ought reasonably to have been anticipated as a probable result of such negligence. Mexican Nat. Ry. v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642; Gonzales v. Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St.

Rep. 17; Texas & Pac. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Reynolds v. G., H. & S. A. Ry., 101 Tex. 2, 102 S. W. 724, 130 Am. St. Rep. 799; Stone v. Boston & A. Ry., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794.

[7] It is proper to note further that the question whether or not an injury of the character of the one in controversy ought reasonably to have been anticipated as a probable result of the negligence alleged should be specifically submitted to the jury for their determination, if the court is requested so to do, unless by reason of an absence of proof or conclusiveness of proof to sustain the affirmative of that issue a peremptory instruction thereon would be warranted. T. & P. Ry. v. Reed, 88 Tex. 439, 31 S. W. 1058; Washington v. M., K. & T. Ry., 90 Tex. 314, 38 S. W. 764; Mex. Nat. Ry. Co. v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642.

Appellant presents the further contention that the proof showed that at the time of the accident plaintiff was performing a service pertaining to interstate commerce; that the alleged negligence upon which a recovery was sought did not consist of any violation of the federal Safety Appliance Act, passed April 22, 1906; that, under the established rule obtaining under such circumstances, plaintiff assumed the risk of his injury since, from his own testimony, it conclusively appears that before and at the time he undertook to relieve the pressure of gas in the car he knew of the alleged defect and of the dangers incident to his attempt to remedy it, citing, among other authorities, N. Y. Central Ry. & Hudson River Ry. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298; S. A. L. Ry. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; St. L. S. W. Ry. v. Hynson, 101 Tex. 543, 109 S. W. 929; St. L. S. W. Ry. v. Mathis, 101 Tex. 342, 107 S. W. 530; Snipes v. Bomar Cotton Oil Co., 161 S. W. 1, by our Supreme Court.

The trial court in express terms charged the jury that plaintiff was engaged in handling interstate commerce at the time of his injury. The evidence cited by appellant to show that plaintiff was so engaged consisted of proof that at the time of the accident the car in controversy was one of a train of cars already made up and standing on a side track ready to leave on a trip south, although no engine had yet been attached for the trip; that several other cars in the train were loaded with interstate traffic, some originating in Kansas, some in Missouri, and some in Colorado, most of which were destined for Galveston, Tex. Neither by an exception to that instruction nor by briefs here has the plaintiff questioned the correctness of that instruction. However, in view of another trial, we suggest that, even if plaintiff was so engaged, yet, as shown already, the immediate occasion of the explosion was

the further loosening of the dome cap by Pettigrew and Clopton; and by reason of that fact we doubt the application of the rule of assumed risk upon the theory advanced by appellant, unless it can be said that in so doing Pettigrew and Clopton were acting under the direction of plaintiff, or with his consent and approval, or that after he discovered that they would proceed to further unscrew the cap, and before they did so, plaintiff voluntarily remained in a place of known danger, and that if he had desired to do so, he had sufficient time and opportunity to leave the car and place himself in a place of safety before the explosion occurred; with respect to which issues there was some controversy in the evidence.

[8] We believe that the evidence was sufficient to warrant the submission of the issue of future impairment of plaintiff's ability to earn money, contrary to appellant's contention presented in another assignment. But we are of the opinion that appellant was entitled to an instruction to the jury presenting in an affirmative manner the group of facts upon which it relied to refute the charge of negligence upon which plaintiff's suit was predicated. E. P. & S. W. Ry. Co. v. Foth, 101 Tex. 133, 100 S. W. 171, 105 S. W. 322; Yellow Pine Lumber Co. v. Noble, 101 Tex. 125, 105 S. W. 318; St. L. S. W. Ry. Co. v. Johnson, 100 Tex. 237, 97 S. W. 1039; St. L. S. W. Ry. Co. v. Hall, 98 Tex. 480, 85 S. W. 786; Wells Fargo Co. v. Benjamin, 179 S. W. 513. The court not only failed to give any such instruction in his main charge but refused two requested by appellant. One of those so requested reads as follows:

"If you believe from the evidence plaintiff's injury resulted from a pure accident and was not proximately caused by the negligence on the part of any one, then you are instructed to find for defendant Houston & Texas Central Railway Company."

That instruction, or some other of like import, should have been given. G., H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, loc. cit. 517, 63 S. W. 534.

For the reasons indicated the judgment is reversed, and the cause remanded.

## On Rehearing.

As noted in our opinion on original hearing, plaintiff has never questioned the correctness of the peremptory instruction to the jury by the trial judge to return a verdict in favor of defendants, the Magnolia Petroleum Company, the Corsicana Petroleum Company, and Ft. Worth & Denver City Railway Company, and no complaint has been made by him, either in the trial court nor in this court, of the judgment in favor of those defendants based on a verdict in their favor in obedience to the instruction.

In our original opinion it was our intention to leave that part of the judgment undisturbed and to reverse only that part of the judgment rendered in favor of plaintiff against appellant, the Houston & Texas Central Railway Company, and to remand the case for another trial as between plaintiff and that defendant only; and the judgment so rendered by us and the opinion filed will therefore be amended and reformed so as to give effect to that intention.