# JUNE, 1907.

CORA REYNOLDS v. GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY.

No. 1722.    Decided June 5, 1907.

**Negligence—Proximate Result—Escape of Infected Cattle—Quarantine.**

A railway company negligently permitting the escape from its feeding pens into an adjoining pasture of cattle it was transporting from a point south of the quarantine line could only be held liable to the owner of the pasture for such damages as were the natural result of its negligence,—such as ought to have been contemplated as the result of the escape; and in the absence of proof that the cattle were infected and communicated infection to the pasture, damage caused to the owner by the action of the officers of the State in placing the pasture under quarantine because of such escape of the cattle into it, which prevented the owner from shipping his own cattle to market therefrom, was not a result of the negligent act for which the company could be held liable.

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Presidio County.

Cora Reynolds sued the railway company and the trial resulted in verdict in accordance with a peremptory instruction to find for the defendant. Plaintiff appealed, and on affirmance obtained writ of error.

*J. A. Gilbert* and *J. M. Dean,* for plaintiff in error.—In an action sounding in tort, plaintiff is entitled to recover damages for all such injurious consequences as follow immediately from the cause which forms the basis of the action; not merely the consequences which invariably or necessarily result, but also those which have in the particular instance naturally ensued. Missouri, K. & T. Ry. Co. v. Wood, 66 S. W. Rep., 449; Hughes v. City of Austin, 33 S. W. Rep., 607; Grimes v. Eddy, 26 L. R. A., 638; Ry. v. Lucas, 6 L. R. A., 193; 1 Sutherland on Dam. (3rd ed.), par. 14-16, pp. 39-43.

In negligence cases, to authorize the court to take the question from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. Lee v. International & G. N. Ry. Co., 89 Texas, 583; Choate v. S. A. & A. P. Ry. Co., 90 Texas, 81; Joske v. Irvine, 91 Texas, 582; Garza v. Texas & P. Ry. Co., 41 S. W. Rep., 173; Morris v. Travelers

Ins. Co., 43 S. W. Rep., 898; Lindsay v. Murphy, 48 S. W. Rep., 531; San Antonio v. Porter, 59 S. W. Rep., 922; Houston & T. C. Ry. Co. v. Medlenka, 43 S. W. Rep., 1028.

*Baker, Botts, Parker & Garwood* and *Beall & Kemp,* for defendant in error.—Negligence, or an act not amounting to wanton wrong, is not the proximate cause of an injury which, in the light of the attending circumstances, should not have been foreseen as a natural and probable consequence thereof. Texas & P. Ry. Co. v. Bigham, 90 Texas, 223; Broussard v. Sabine & E. Tex. Ry. Co., 80 Texas, 329; St. Louis Title Co. v. Gholson, 30 S. W. Rep., 269; Smith v. Texas & P. Ry. Co., 58 S. W. Rep., 151; Railway Co. v. Ware, 67 Texas, 635; Brandon v. Mfg. Co., 51 Texas, 126; Jones v. George, 61 Texas, 351; Houston & T. C. Ry. Co. v. Hill, 63 Texas, 384; Missouri, K. & T. Ry. Co. v. Dobbins, 40 S. W. Rep., 862, 41 Texas, 61.

The court did not err in charging the jury that plaintiff had failed to make out a case and that they should find for the defendant. Gulf, C. & S. F. Ry. Co. v. Anson, 82 S. W. Rep., 785; Gulf, C. & S. F. Ry. Co. v. Taliaferro, 89 S. W. Rep., 1120; Louisville H. & S. T. Ry. Co. v. Jolly's Admx., 90 S. W. Rep., 977; Hathaway v. E. Tenn. Ry. Co., 29 Fed. Rep., 489; Boland v. M. R. R. Co., 36 Mo., 484; New York R. Co. v. Skinner, 19 Pa. St., 298; Kavanaugh v. Atchison, T. & S. F. Ry. Co., 63 S. W. Rep., 374; Suburban Electric Co. v. Nugent, 34 Atl. Rep., 1069; Hutchinson v. Gas Light Co., 122 Mass., 222; American Brewing Co. v. Talbot, 42 S. W. Rep., 681.

MR. JUSTICE BROWN delivered the opinion of the court.

Plaintiff in error owned a pasture consisting of several thousand acres of land situated in Jeff Davis and Presidio Counties near to the line of the railroad of the defendant in error and its station, Valentine. The pasture is situated north or above the quarantine line established by the livestock commission of Texas and the City of San Antonio is situated below, or south of that line. T. W. Ardoin shipped over the defendant's railroad to the City of El Paso twenty-six head of cattle for the purpose of slaughtering them, and at Valentine the cattle were unloaded, fed and watered and were put into a pen belonging to the railroad company to remain over night. There was a gate leading from that pen into a larger one belonging to the railroad company, from which there were gates leading into a pasture of the plaintiff in error. The owner of the cattle and an employe of the railroad company placed the cattle in the smaller pen and fastened the gate, which lead from that into the larger pen, with a sliding latch about four or five feet long and four inches wide which entered into the post of the gate about two or three inches. The next morning the gate between the two pens was found open and the cattle were scattered at large in the pasture of the plaintiff in error. The evidence does not show whether the cattle were shipped in compliance with the regulations of the sanitary commission or not. It does not appear that the cattle were actually infected with ticks, nor does it appear that the ranch of the plaintiff was

infected thereafter with ticks; nor that any of her cattle were ever known to have ticks upon them. The fact of the escape of the cattle into the pasture becoming known to the quarantine officers, a quarantine of the pasture was declared, whereby the shipment of the cattle was prohibited except in compliance with the general quarantine regulations. By reason of the quarantine of the pasture the plaintiff alleges that she was prevented from shipping the beef cattle out for sale in the Spring of the year and that she had to keep them until in the Fall, and, during the Summer, the grass became so scarce in her pasture that by reason of its being overcrowded by the presence of the steers that were there she lost seventy-five head of cows and seventy-five calves. She alleges some other consequences flowing from the quarantine of her pasture which inflicted injury upon her more or less, but under the view we take of the case it is unnecessary to go into details as to those matters of result to her.

The first question which presents itself to us is, assuming that the defendant railroad company was negligent in the manner of fastening the gate and that it was required, under the rules and regulations of the livestock commission, to take notice that the cattle being carried by it came from an infected territory and were to be treated as infected cattle until the law and regulations of the commission were complied with, then was the act of declaring the quarantine against plaintiff's pasture by the officers of the State such a proximate consequence of the negligence of the defendant as to make it liable for the damage accruing therefrom.

The railroad company should be held liable for all injurious consequences which its agent could have foreseen as a result of the escape of the cattle into the pasture of the plaintiff. To express the rule in a different form; the railroad company should be held liable for such injuries to the plaintiff as were the natural consequences of the escape of the cattle, such as ought to have been contemplated as the result of such escape. (Gonzales v. Galveston, 84 Texas, 3; Mexican Natl. Ry. Co. v. Mussette, 88 Texas, 719.)

The plaintiff alleges that her damages resulted from the act of the livestock sanitary commission of the State in declaring a quarantine against her pasture, because those cattle from below the quarantine line had escaped into that pasture, and in consequence of the declaration of quarantine against her she was unable to ship her cattle to market for sale; besides other consequences that she alleges to have flowed from the quarantine. We find no provision of the law which created the livestock sanitary commission, nor any rule or regulation adopted by the said commission, which forbids the shipping of cattle from a pasture above the quarantine line, except the seventh paragraph of the rules published by the commission which declared that some pastures lying north and west of the quarantine line were infected with the "cattle tick" and that cattle so infected had been in those pastures from which there was danger in driving or shipping from such pasture, declaring pastures of that class to be infected territory and subject to the rules prescribed for such territory. The commission then promulgated the following rule to govern in moving cattle from such pastures: "It is therefore ordered by the Live Stock

Sanitary Commission that from this date no cattle shall be moved, shipped or driven, transported or otherwise moved, or removed, from or out of any pasture or pastures lying north and west of the aforesaid quarantine line, when such cattle are infected with ticks, and that from this date no cattle shall be moved out of any such pastures where cattle in said pasture or pastures have been infected with ticks during the year 1903 to any other part of the State of Texas until such cattle have been inspected by an inspector of this commission and found free from ticks, fever, infection, contagion and disease, and a permit given therefore by this Commissioner or dipped as required in Rule 4." The language used clearly limits the rule to pastures in which cattle actually infected had been or were then running and to such pastures as at the time the removal should thereafter be effected might have in them cattle actually infected. There is no language in the order which could be applied to a case like this, where cattle from an infected territory, but not themselves infected with the tick, have been temporarily in the pasture but then removed leaving no infection behind.

It may be true that under the authority given them by law the Live Stock Sanitary Commission had power to declare a quarantine around the plaintiff's pasture for the reason that cattle from infected territory had been therein, but in order to make the defendant liable for the bad effects of the quarantine, the conditions must have been such that the agent of the defendant company at the time should have foreseen that the quarantine would be declared in pursuance of the provisions of the rule. We are unable to see how any man looking at the matter from the viewpoint of the railroad company could have foreseen that the Sanitary Commission, or any of its officers, under the rule quoted, would declare a quarantine against the plaintiff's pasture and thereby prevent her from shipping her stock; and if it could not have foreseen and can not be said to have been the usual and probable result of the conditions produced by the negligence of the defendant, then that negligence was not the proximate cause of the injury and the plaintiff can not recover. (Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 274.)

The judgment of the Court of Civil Appeals is affirmed.

*Affirmed.*