TEXAS TRACTION CO. v. NENNEY et al.
(No. 1474.)

(Court of Civil Appeals of Texas. Texarkana. June 3, 1915. Rehearing Denied June 24, 1915.)

1. MASTER AND SERVANT ⬥248—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—DISCOVERED PERIL.

Where the injured railroad employé was guilty of negligence in failing to flag an approaching car, but such car approached the motor car whereon the injured servant was riding, so that the employés in charge discovered the motor car ahead, and that a collision was imminent, in time to have stopped their car before the collision, had they endeavored to do so, instead of jumping, the injured servant's recovery was not necessarily barred by his negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 801–804; Dec. Dig. ⬥248.]

2. MASTER AND SERVANT ⬥281—INJURIES TO SERVANT — ACTION—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action for injuries to a railroad employé when the motor car on which he was riding was struck by another car, forcing him to jump, evidence held insufficient to show that the servant's negligence in failing to flag the car was the proximate cause of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. ⬥281.]

3. NEGLIGENCE ⬥136—PROXIMATE CAUSE—QUESTION FOR COURT.

The question of proximate cause is nearly always for the jury, but sometimes the evidence is such that it becomes an issue of law for the court.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ⬥136.]

4. DEATH ⬥58—ACTION—PROXIMATE CAUSE—BURDEN OF PROOF.

In a suit for injuries resulting in death, the plaintiff must show that the injuries were the proximate cause of the death.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 75–78; Dec. Dig. ⬥58.]

5. DEATH ⬥76 — INJURIES TO SERVANT — CAUSE OF DEATH — SUFFICIENCY OF EVIDENCE.

In an action against a railroad for death of its employé, evidence held insufficient to show that injuries received when jumping from a motor car about to be run into by another car were the proximate cause of deceased's death, by tuberculosis.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 94; Dec. Dig. ⬥76.]

6. NEGLIGENCE ⬥59—"PROXIMATE CAUSE."

An act of negligence is the "proximate cause" of an injury, if the injury is the natural and probable consequence of the negligent act, and should have been foreseen as its result in the light of the attending circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. ⬥59.

For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

Appeal from District Court, Collin County; M. H. Garnett, Judge.

Action by J. P. Nenney, Jr., and others against the Texas Traction Company. Judgment for plaintiffs, and defendant appeals. Reversed, and cause remanded.

Crane & Crane, of Dallas, J. R. Gough, of McKinney, and Templeton, Beall & Williams, of Dallas, for appellant. Clarence Merritt, of McKinney, for appellees.

HODGES, J. In December, 1912, J. P. Nenney, Jr., was injured while employed in the service of the Texas Traction Company, the appellant. The circumstances under which the injury occurred are substantially as follows: Nenney was employed as a flagman, whose duty it was to accompany one of the appellant's work trains engaged in hauling and distributing gravel over its track.

On this occasion the gravel train, after having been loaded at the pit located on a spur track, moved onto the main line, and thence south to what is referred to in the testimony as Kirkland's Switch. It there went in on the siding at the north end and stopped near the south end of the switch. After being disconnected from the other cars, the motor car moved out on to the main line at the south end of the switch, with a view of going to the north end and again entering upon the siding; the purpose of the employés being to shift the motor car from the south end of the train to the north end in order that it might be in front when they carried their load to its destination to some point north. Kirkland's Switch was designated as a passing point; and on the morning of December 12th, when this injury occurred, this gravel train had orders to go upon the siding and allow an express car from the north and a passenger car, referred to as the "Limited," from the south, to pass. Nenney, whose deposition was taken prior to his death, testified as follows as to the circumstances immediately preceding his injury:

"We had been to the gravel pit after gravel, and were going down to Kirkland, where we had a siding, to set the cars in to run around them. We had pulled on to the south end of the switch. I got off the car, opened the switch, and set the cars on the siding. It was only a few minutes until the Limited was due. I closed the switch, thinking they would stay on the siding, but saw they were coming out, so opened the switch to let motor car out on main line. They came out, and Smith said we would have to hurry, as the Limited would be there in a few minutes. I closed the switch and got on the front end of the car and started to the north end of the switch. Before we got there I saw the express car coming. I pulled my danger signal on the express crew, and saw the messenger make a run and jump. The motorman on the express car got down on steps and jumped off. I looked back, saw my crew was jumping off, so I jumped too."

In jumping from the car under the circumstances detailed above, Nenney received injuries about his hips and stomach which disabled him for some time and confined him to his bed for several weeks. He subsequently recovered sufficiently to be able to walk with a stick, but was never able to resume his regular work or to do any other character of labor. In February following the injury, Nenny contracted grippe. Later tuberculosis followed, from which he died. A short time before his death, Nenney had filed a suit against the appellant to recover damages for the injuries he had sustained. After his death, what is designated as an "Amended Plea in Intervention" was filed in the same suit by his widow for herself and as next friend for her minor child, joined by the father and mother of the deceased.

The petition alleged that Nenney was injured as the result of negligence on the part of the appellant's employés in charge of the express car in running at a high and excessive rate of speed in violation of the rules of the company, in failing to have the car under control when approaching Kirkland's Switch, and in failing to keep a proper lookout for cars in front. It was also alleged that those employés discovered, or by the exercise of ordinary care could have discovered, the presence of the motor car on the main line in time to have stopped and prevented the collision, had they used the means at their command. Other acts of negligence not necessary to mention, were also charged. It was further alleged that Nenney, at the time of his injury, was a young man in good health, 29 years of age, and capable of earning $100 per month; that by reason of the injury his nervous system was shocked and so greatly weakened and his vitality lowered to such an extent that he was unable to resist and throw off disease; that he was thereby rendered more susceptible to the contraction of disease; and that he did contract tuberculosis, from which he died as the result of his injuries. It is alleged in the alternative that, if mistaken in the averments that Nenney died as the result of the injuries, then it is alleged that he did not die in consequence thereof; that prior to his death, and as a result of his injuries, he suffered great physical and mental pain and incurred large expenses for the services of physicians. All of the facts necessary to authorize a recovery for an injury which did not result in death are fully set out. While it is true the father and the mother were parties to this count of the petition, no objection appears to have been made to it by reason of that fact.

At the conclusion of the evidence, the appellant requested a peremptory instruction in its favor. This was refused by the court, and the case was submitted on special issues. The answers of the jury upon all the issues of negligence were favorable to the appellees. The jury further found that the injuries sustained by Nenney in jumping from the car at the time were the proximate cause of his death. They found that his widow sustained damages in the sum of $4,150 and his minor child damages in the sum of $6,000 by reason of his death.

The refusal of the court to give the appellant's peremptory instruction is the basis of the first group of assigned errors. It is contended that this charge should have been given because the uncontroverted evidence shows that the collision occurred as the result of Nenney's failure to perform his duties as flagman; that he was not at the proper place in the line of his employment; that he failed to leave torpedoes upon the track some distance from the motor car in order to give warning to the belated express car; that, by reason of his negligence, the employés in charge of the express car were placed in a perilous situation and were caused to jump from and leave that car at the time they did. It is also contended that this peremptory instruction should have been given because the evidence shows, as a matter

of law, that the injuries sustained by Nenney were not the proximate cause of his death.

[1, 2] Assuming. that Nenney was himself guilty of negligence in failing to perform his duties as flagman on that occasion, the peremptory instruction should not have been given, because of the facts raising the issue of discovered peril. The testimony offered by the appellees tended to show that the employès of the appellant, who were in charge of the express car, were in a position to discover, and did discover, the presence of the motor car upon the main line, and that a collision was imminent, in time to have stopped their car and avoid a collision. Instead of doing this, it appears that they jumped from the car, thus making a collision inevitable. It was only after they had abandoned the car that Nenney made his jump. A peremptory instruction would have ignored that feature of the evidence and that ground of recovery. Furthermore, we are not inclined to hold that the evidence shows, as a matter of law, that Nenney was guilty of the negligence which proximately brought about that unfortunate condition of affairs. The testimony upon that issue was such that the jury were justified in concluding that Nenney was acting in the line of his duty, and that the accident was due solely to the negligence of those in charge of the express car.

[3-6] But it is insisted that a judgment based upon a finding that the injuries received by Nenney were the proximate cause of his death is without support in the evidence. It is undisputed that the immediate cause of Nenney's death was pulmonary tuberculosis contracted in March following the date of his injuries. The physician who attended and treated his injuries, and who also treated him several times during his last illness, testified at length upon the trial, both as an expert and as to the details of Nenney's condition. This testimony shows that Nenney was injured mainly about the hips and back, which confined him to his bed about three weeks or less. He was then able to sit up, and in about two weeks later able to walk around on crutches. Subsequently, and within a short time, he discarded his crutches and used only an ordinary walking stick. At that time he had regained much of his lost flesh and was progressing satisfactorily to his physician, and in the latter's opinion had about attained his normal condition. It was also shown that Nenney was talking of resuming work within a short time. In fact, he had improved to such an extent that it was considered only a question of a few days when he would go back to work. Some time in February his physician was again called in and found Nenney suffering from a severe attack of grippe. Nenney stated that he had been to Dallas and had exposed himself to unfavorable weather conditions; that his feet had become damp and cold. Grippe at that time, according to the evidence, was prevalent in the country, and attacked the strong as well as the weak. On account of his brother having previously died of tuberculosis, Nenney had for some time been apprehensive that he would likely fall a victim to the same disease, and he communicated his fears to his physician. When called in to treat him for grippe, the physican made an examination of Nenney's lungs to ascertain if they were involved. He found nothing to indicate that they were. Two weeks later he made another examination and found numerous tubercular germs in the sputa of the patient. Nenney was then still suffering from the effects of the grippe. When this discovery was made, he was placed under treatment for tuberculosis, and finally sent to the state institution for tubercular patients at Carlsbad. He continued to grow worse, and later returned to his home, where he died in August, about eight months after receiving his injuries. The attending physican gave it as his opinion that those injuries had nothing whatever to do with causing the death of Nenney. Other physicans, who testified from hypothetical statements of facts, gave concurring opinions. There is no evidence in the record to the contrary. The widow and mother of the deceased stated that he never ceased to complain of his stomach, and that he had not, when attacked by the grippe, fully regained his normal health. This fact also appears from portions of the deposition of Nenney taken prior to his death and after the institution of his suit. All of the physicians who testified upon the trial stated that tuberculosis is now regarded as a bacterial disease due to the infection of specific germs, and that one whose physical condition had been weakened by any character of disorder would be less able to resist the ravages of such germs after infection. They also testified that the grippe usually produces a condition of the physical system which furnishes a fertile field for the development of the tubercular bacilli. The fact that Nenney was progressing so well towards recovery, and had about regained his normal condition at the time he was attacked by the grippe, was regarded by his physician as satisfactory evidence that he would not have succumbed to any tubercular infection had he not been attacked by the grippe.

The question of proximate cause is nearly always one for the jury; but sometimes the state of the evidence is such that it becomes an issue of law for the court to determine. In every case the burden of proving that the misconduct complained of as the proximate cause alleged injuries, for which a recovery is sought, rests upon the plaintiff in the action. Where the suit is for injuries resulting in death, the plaintiff must show that, but for the injuries, death would not have resulted. We do not think the plaintiffs in this suit have discharged that burden. There is in the record no legal evidence from which the jury could reasonably infer that the in-

juries sustained by Nenney in December contributed in any way to his death in August following. We may concede the contention of the appellees that the injuries complained of had so weakened Nenney's condition and reduced what the physicians termed his "resisting power" as to make him less able to combat the disease when once infected; but we cannot overlook the fact that there is nothing in the evidence to indicate that this debilitated condition brought about the infection itself. The effect of the injuries, regarded from the standpoint most favorable to the appellees, was merely to produce a condition upon which another and an independent cause, the tubercular bacteria, might enter and operate. That such an infection is sufficient to cause death of those in normal health, when attacked, is a matter of common knowledge. There was a time in the history of medical science when pulmonary tuberculosis was not regarded as a bacterial disease, but was looked upon as the natural result of certain forms of debility. But that theory has been abandoned, and no person is considered as subject to that disease until exposed to the infection from specific pathogenic bacteria. We think the evidence was insufficient to support the particular judgment rendered. Railway Co. v. Bigham, 90 Tex. 223, 38 S. W, 162; Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602; H. & T. C. Ry. Co. v. Gerald, 128 S. W. 166; Reynolds v. Railway Co., 101 Tex. 2, 102 S. W. 724, 130 Am. St. Rep. 799.

This insufficiency is apparent when the facts are viewed from still another standpoint. Passing by the many refined technical definitions given by the courts in their efforts to make plain the meaning of the term "proximate cause," we prefer the test adopted by the Supreme Court of the United States in an early decision and approved by the Supreme Court of this state in the Bigham Case, above referred to:

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

Justice Gaines, continuing, said:

"It follows that, in our opinion, the question of probable cause ought to depend upon the further question whether a reasonably prudent man, in view of all the facts, would have anticipated the result, not necessarily the precise actual injury, but some like injury, produced by similar intervening agencies."

Bearing in mind this rule, can it be said that the agents of the appellant, whose misconduct caused the injuries to Nenney, should at the time have contemplated that he would receive some physical injuries, that these would cause a debilitated condition of his physical system, and that he would, in consequence thereof, fall a victim to some bacterial disorder? It requires no expert testimony

to inform the courts that comparatively few people affected by traumatic injuries fall victims to such disorders by reason of their debilitated condition. A probable consequence may be regarded as one more likely to follow an injury than not to follow it. Society furnishes numerous instances of debilitated physical systems and depleted vital forces which are not followed by any bacterial diseases. On the other hand, it is a matter known to all that pulmonary tuberculosis is a scourge which attacks the normal as well as the abnormal.

The absence of testimony, however, sufficient to support a finding that Nenney's death was the proximate result of his injuries, did not call for a peremptory instruction in the present state of the record. The evidence was such that a recovery was permissible upon that count in the petition which asked for damages for injuries which did not result in death. The judgment, however, should be reversed, because predicated upon untenable grounds.

The remaining assignments, which do not involve the proposition discussed, are overruled.

The judgment will be reversed, and the cause remanded for a new trial.