## DANIEL v. KOSMINSKY et al.

### No. 3226.

Court of Civil Appeals of Texas. El Paso.
June 20, 1935.

Rehearing Denied Sept. 12, 1935.

C. E. Bryson, of Houston, and King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellant.

Keeney & Moseley, of Texarkana, and Touchstone, Wight, Gormley & Price, of Dallas, for appellees.

WALTHALL, Justice.

Plaintiff, Dr. N. B. Daniel, brought this suit against defendants, Drs. L. J. Kosminsky, Hugh E. Longino, and E. L. Beck, to recover damages for personal injuries received by him on the night of June 7, 1933, in falling into an elevator shaft at the lower or lobby floor of the building at what is described as the Texarkana Clinic Building, in the city of Texarkana, Tex.

Plaintiff alleges that his fall into the elevator shaft and the injuries to him by reason thereof were caused by the negligent acts and omissions of defendants, their servants, agents, and employees, stated in his petition, and which negligence proximately caused his said fall and injuries.

It was agreed by the parties to the suit that the ownership and control of the building, for some time prior, and since that time, and at the time of the happening of the matters involved here, were in the defendants. It might be stated here that the elevator involved in this suit was installed in the Texarkana Clinic Building. The building consists of three stories and basement, is an office building, and plaintiff was a tenant of defendants and used an office on the third floor of the building. Plaintiff was and is a physician and surgeon by profession, and, prior to the matters involved here, plaintiff had been occupying an office in said building in partnership with defendants in the practice of his profession, and in his profession was at times in his office in the daytime and in the nighttime. Defendants installed the elevator in said building for the use of tenants occupying offices in said building.

The elevator is described as consisting of a shaft or passageway extending from the basement to the third floor, and in said shaft or passageway was maintained and operated a cage or carriage in which tenants of the building were carried; such cage was entered by doors entering into the elevator shaft from each floor; to enter the cage it was necessary to open a door entering into the elevator shaft. Plaintiff alleges that the doors opening into the elevator shaft and cage should be opened from the inside of the cage and by an operator who rode in the cage; that said elevator was not of a type of elevator known as an automatic elevator designed and intended to be used by persons riding therein without the aid of an operator, which was safer for persons intending to operate it themselves. It is alleged that defendants employed an operator for the elevator during the daytime, but did not

employ an elevator operator for nighttime, but instead provided in the lobby on the first floor a key to enter the elevator, by means of which it was intended by defendants that tenants could and would open the doors leading from various floors into the elevator from the lobby. Plaintiff alleges that he was not acquainted with the construction of the various types of elevators in use and the devices in use for making elevators safe, but was assured, by the agents and employees of defendants in charge of the elevator, that said elevator was of modern construction and of the proper type for that building, and was safe for the use of tenants, and safe for their use in operating in the nighttime without an operator, all of which plaintiff alleges he relied upon. Plaintiff pleaded that he often used the elevator in the nighttime and had used the key, and that at times when we had done so the cage had always been present at the opening of the elevator door and that he believed the door could not be opened with the key unless at the time of opening the door the cage or carriage was present and opposite the door; that had the elevator been equipped with a proper device, it could and would have been impossible to open the door leading from the lobby into the elevator, or in fact from any floor into the elevator carriage, unless the carriage was opposite the door. Plaintiff alleged that on the night of June 7, 1933, it became necessary for him, in the discharge of his professional duties, to go to the Clinic Building; that he went into said lobby and to the door leading from the lobby into the elevator, procured the key, and opened the door, and the carriage not being opposite the door as he believed it was, plaintiff fell down the shaft to the basement and was injured.

Plaintiff assigned negligence as proximately causing his injuries, substantially as follows: In installing that type of elevator without providing a night operator; in not providing a device, then in general use, which would prevent the door from being opened by means of the key unless the elevator carriage was opposite the door; failure to have a light in the elevator shaft. Plaintiff states that he was injured in his fall, the character of his injuries and his damages for which he sues.

Defendants answered by demurrers, general and special; general denial; answered that plaintiff was, from January, 1930, until about February, 1933, connected with the Texarkana Medical & Surgical Clinics, of which defendants were also members; that plaintiff was a partner in the firm with defendants for about a year prior to the time the firm was dissolved in February, 1933, and since that time plaintiff has been continuously about the building to the time of his injury; that plaintiff was familiar with the elevator and its operation, and used it frequently at night, knew of the conditions in the lobby, the light, the switch to the light, and how to use the elevator and how to get into it; deny that they ever made any representations to plaintiff about the elevator as to its construction or operation, or as to any device it had on it; deny that they knew what plaintiff thought or believed, or his understanding at the time he opened and stepped into the elevator door.

Defendants assign negligence on the part of plaintiff as proximately causing his fall and injuries, substantially as follows: Failure to turn on the light in the lobby, if it was not already on; failure to ascertain whether some one else had taken the elevator from the first floor to some other floor before attempting to use it; in stepping into the elevator shaft without first ascertaining whether the elevator cage was in position at the first floor; failure to press the button to determine whether or not the elevator cage was opposite the door before opening the elevator door; opening the elevator door without first ascertaining that the cage was opposite the door; failing to use any means at his command to ascertain whether the elevator carriage was at the first floor before attempting to use it.

On question submitted, the jury found that the injuries to plaintiff were not the result of an unavoidable accident. The jury found that defendants were negligent on some of the issues submitted and that each of such negligent acts so found was a proximate cause of plaintiff's injuries. The jury also found that plaintiff was negligent on several issues submitted, namely: Failing to turn on the light in the lobby on the occasion in question; in failing to ascertain whether some one else had taken the elevator from the first floor to some other floor before attempting to use same; failure to press the button to determine whether the elevator cage was opposite the door before opening it; in opening the elevator door and standing in close proximity thereto, without first ascertaining that

the cage was opposite the door; and that each of said negligent acts was a proximate cause or contributed to cause the plaintiff's fall and the injuries complained of.

The jury found and assessed plaintiff's damages at $5,000.

On the issues submitted and found, the court entered judgment that plaintiff take nothing by his action and that defendants recover costs. The court overruled plaintiff's motion for a new trial, to which he excepted and prosecutes this appeal.

### Opinion.

Appellant submits that the jury was guilty of misconduct in several particulars, and for that reason the court was in error in overruling his motion for a new trial based on misconduct of the jury. Four witnesses were examined as to the matters of misconduct charged. The evidence is lengthy, covering some forty-seven pages of the record. We have read it all very carefully. The trial court made no finding of fact on matters charged as misconduct; but the court heard the evidence and overruled the motion. The matters complained of had reference to what one of the jurors, Sam Milazzo, said as to some of the issues on contributory negligence, some of which issues were found against appellees. Sam Milazzo, the juror charged with misconduct, testified on the hearing and denied, or very materially qualified, what he was charged with having said in the jury room; on other matters charged against the juror, the juror said, in effect, that he "did not remember saying a thing like that," and used similar expressions.

The jury found that plaintiff was injured and assessed his damages at $5,000. In questioning the jurors as to what occurred in the jury room, for the purpose of the motion for a new trial, the record shows that some of the jurors who testified on the hearing of the motion for a new trial were told that the jury had rendered a verdict that kept Dr. Daniel from getting any money. Those jurors were under the impression (said Sam Milazzo stated it in the jury room), before they were informed, that Dr. Daniel would receive judgment for the assessed damages, regardless of what the answers were on contributory negligence. But Sam testified that he did not remember saying anything like that.

The jurors who testified on the hearing of the motion said they thought, at the time, the questions were answered right under the evidence, but at the time they testified on the hearing of the motion, they thought they did not give sufficient time to the questions on contributory negligence.

■ We have concluded that the circumstances and the evidence are such as to call for the exercise of the discretion of the trial court and that the trial court, on a conflict of the evidence, did not abuse his discretion in overruling the motion for a new trial, based on misconduct of the jury. Bradshaw v. Abrams (Tex. Com. App.) 24 S.W.(2d) 372, and cases cited.

Appellant submits, in effect, that on the trial no evidence was introduced sufficient to authorize the jury's finding that Dr. Daniel knew, or was under the duty to know, that the elevator door could be unlocked and opened on the lobby floor when the elevator was not opposite the door. Dr. Daniel testified, in substance, that prior to the time of his injury he had never attempted to open the door of the elevator when the elevator cage was not opposite the door; that he did not know that he could open the door on the entrance or lobby floor into the elevator shaft when the elevator shaft or cage was not opposite the door; that he thought the door could not be opened unless the cage was there.

The jury found that prior to Dr. Daniel's injury there existed a mechanical device which could have been installed upon appellees' elevator which would have prevented the opening of the elevator door unless the elevator cage was opposite such door.

The evidence as to such device, as we understand it, does not apply to the type of elevator in use in the Clinic Building; however that may be, no such device was in use on the elevator here.

No direct evidence is found in the record tending to show that Dr. Daniel knew that the lobby door entrance to the elevator could be opened by means of the emergency key, except when the cage was opposite such door.

■ Appellant reasons from the above that no issue having been presented as to appellant's knowledge or want of knowledge whether the elevator cage could be opened by means of the emergency key when the cage was not present and no knowledge of the danger of opening the door in the nighttime with the emergency key when the cage was not present, the issue of appellant's negligence in opening

the door should not have been submitted, and that when submitted there was no evidence to sustain the finding.

Appellant further submits that such would be the duty of appellees to exercise such care to provide for his safety as a tenant in the building.

It seems to us that the question presented is that appellant should have judgment because he was not required, under the circumstances, to anticipate the danger there was in opening the elevator door and reaching into the cage to turn on the light, in the absence of direct evidence that Dr. Daniel knew that the door could be opened in the absence of the cage, and knew of the danger of doing so, and whether, in submitting the issues, the court should have submitted an issue whether Dr. Daniel knew that the door could be opened and knew of the danger of opening the elevator door in the nighttime, with the possible chance that the cage would not be at that floor.

It seems to us that such issues, if they should have been submitted, were but evidentiary issues; they were purely issues tending to negative contributory negligence on the part of Dr. Daniel. In the absence of a tender of such charge, we think reversible error is not shown.

The record shows that Dr. Daniel had used the elevator for several years both day and night, and knew how to get into the elevator cage at night in the absence of an operator, and at the time of his injury he did open the door, and in reaching into the shaft to press the button to turn on the light he fell in the elevator opening or shaft and was injured.

We are of the opinion that the evidence of Dr. Daniel, stated above, as to what he did not know about opening the elevator door in the absence of the cage and did not know of the danger in opening the door, could be considered by the jury in determining the issues submitted by the court on contributory negligence, in determining whether, under the circumstances, Dr. Daniel could or ought to have foreseen or anticipated the danger and the harm that would have resulted from a want of a greater degree of care than used by him in opening the door, and reaching for the button to turn on the light in the nighttime. Rio Grande, El Paso & Santa Fe R. Co. v. Lucero, 54 S.W.(2d) 877 (the opinion by Judge Pelphrey of this court). The rule seems to be well settled that the actor is to be deemed to be responsible for such consequences of his conduct as he could have or ought to have foreseen or anticipated. Reynolds v. Galveston, H. & S. A. R. Co., 101 Tex. 2, 102 S. W. 724, 130 Am. St. Rep. 799; Seale v. Gulf, C. & Santa Fe Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; Paris & G. N. Ry. Co. v. Stafford (Tex. Com. App.) 53 S.W.(2d) 1019; 30 Tex. Jur. p. 699, note 47, and cases there cited.

The proposition is overruled.

We have carefully considered the other points presented in appellant's able and helpful brief and, without discussing them in detail, they are overruled.

The case is affirmed.