## HIGGINBOTHAM et ux. v. INTERNATIONAL–GREAT NORTHERN R. CO. et al.

### No. 4658.

Court of Civil Appeals of Texas. Amarillo.

Nov. 2, 1936.

Rehearing Denied Dec. 14, 1936.

Greenwood & Reeves, of Palestine, and Jones & Jones, of Marshall, for appellants.

Andrews, Kelley, Kurth & Campbell and Sewell, Taylor, Morris & Garwood, all of Houston (Ben Connally, of Houston, of counsel), for appellees.

JACKSON, Justice.

This suit was instituted by the appellants, Clarence Higginbotham and his wife, against the appellees as trustees and receivers of the International-Great Northern Railway Company.

The appellants claim damages for personal injuries that each received at a crossing on the track of the Railway Company by a collision of their automobile with a freight train which they claim was negligently operated by appellees.

The case was submitted to the jury on 43 special issues, a number of which are immaterial to this appeal, but the findings on certain issues, the substance of which we will state, will be sufficient to disclose the matters pleaded and the questions here presented.

The jury, in response to special issues, found in effect that the operators of the train failed to sound the whistle or ring the bell as they approached the crossing; that such failures were each negligence and a proximate cause of appellants' damages; that there was no negligence in the failure of the employees to keep a lookout; that the train was not operated at a rate of speed constituting negligence; that Clarence Higginbotham sustained damages in the sum of $3,500, and his wife suffered damages in the sum of $1,500; that the collision was not the result of an unavoidable accident; that Clarence Higginbotham was driving the automobile, and at the time was under the influence of intoxicating liquor, but said condition was not contributory negligence nor the proximate cause of the injuries; that he looked and listened for the train before entering on the crossing; that he was guilty of negligence in driving the car with more than two people in the seat with him, but that such negligence was not the cause of the collision.

Special issue No. 18–A was submitted by the court in the following language: "Do you find from a preponderance of the evidence that plaintiff, Clarence Higginbotham, failed to bring his automobile to a complete stop before entering on the crossing immediately before the collision?"

This issue was answered in the affirmative, but in response to issues Nos. 19 and 20, the jury answered that such failure did not constitute negligence, and was not the proximate cause of appellants' injuries.

Special issue No. 41 is as follows: "Do you find from a preponderance of the evidence that the plaintiff, Clarence Higginbotham, was guilty of negligence in failing to bring his automobile which he was driving to a complete stop at a point near enough to the track of the railroad so that he would be in a position to see whether or not a train was approaching before proceeding on to the crossing?"

This issue was answered in the affirmative, and, in response to issue 43, the jury found that such negligence proximately caused or contributed to cause the collision and the injuries to appellants.

On the findings of the jury in answer to issues 41 and 43, judgment was rendered for appellees.

The appellants contend, first, that the findings of the jury on special issues Nos. 41 and 43 were immaterial and should be disregarded; and, second, if not to be disregarded, such findings were in irreconcilable conflict with special issues Nos. 18–A, 19, and 20, and therefore furnished no basis for a judgment.

The testimony discloses that the railroad extended north and south and the road appellants were traveling extended across it east and west, and appellants were approaching from the east; that some 2 or 2½ hours before the collision, the appellants, traveling the same road going west to a creek where they expected to do some fishing, passed over the same crossing; that the road appellants were traveling was not a state highway and not recognized and kept up by the county; that it was a community road across which gates had been placed, had not been repaired in recent years, and was in bad condition. The right of way was fenced, and there was a gate 36 feet from the center of the track approaching from the east, and after entering the right of way gate there was a considerable grade to and over the tracks. Weeds and grass were so high that they obstructed the view of the parties as they entered the gate and an approaching train could not be seen until they reached within a distance of 13½ feet from the center of the track, at which point a train could be seen a distance of 510 feet approaching the crossing from the north. The appellants were traveling in a 1926 model car, which was very noisy.

Appellant, Clarence Higginbotham, testified that he looked both ways as he drove inside the gate, but could not see north or

south along the track because of the grass and weeds; that he shifted gears to climb the grade, and was on the track and the train within 3 to 8 feet of him before he discovered its approach.

■ The words, "entering the crossing immediately before the collision," as used by the court in issue 18–A, were apparently construed by the jury to mean entering at the right of way gate 36 feet from the center of the track. Under the record this, in our opinion, is the correct interpretation of the meaning of the word "crossing" as used in connection with the other language in the charge. Galveston, H. & S. A. Ry. Co. v. Rodriguez et ux. (Tex.Com.App.) 288 S.W. 151.

■ The failure to bring the automobile to a complete stop before entering the crossing immediately before the collision was not negligence, according to the jury's finding, and this finding is supported by the uncontroverted testimony which shows that stopping his automobile and looking for the approach of a train at the entrance to the crossing would have been useless since the approach of a train was completely obscured. Had appellant stopped and looked 13½ feet from the center of the track, the train could have been seen approaching from a distance of 510 feet. The jury found that appellant, Clarence Higginbotham, was guilty of negligence in failing to stop at a point where the approach of the train could have been seen, and this finding, in our opinion, is not an immaterial issue, nor is it in conflict with the findings in issues Nos. 18–A, 19, and 20.

■ In addition to the actual knowledge acquired by appellants from passing over the same crossing a short while previous to the accident, "A railroad track is of itself a proclamation of danger, imposing upon the traveler at the railroad crossing a positive duty of using care to avoid trains." San Antonio & A. P. Ry. Co. v. Singletary (Tex.Civ.App.) 251 S.W. 325, 326.

In Jones et al. v. Louisiana-Western Ry. Co. (Tex.Com.App.) 243 S.W. 976, 980, in speaking of the fact issues relative to the duty of one approaching a railroad crossing, it is said: "Whether he looked again toward the east in the short minute and a half between the time he started his truck and the time it was struck by the train, how far he looked, or whether an ordinarily prudent person would have looked again, or how far such person would have looked, were likewise questions for the jury. Whether he, in the exercise of ordinary care under all the circumstances in evidence, should have discovered the train in time to again stop his truck before it entered upon the track was also a question for the jury. It is true this theory is based on estimates, but such estimates were in evidence, and the jury had the right to accept and consider them."

In Barron v. H. E. & W. T. Ry. Co. (Tex.Com.App.) 249 S.W. 825, 828, the court said: "Generally speaking, it is a question of fact for the jury as to the distance from the crossing a party should be when he exercises some kind of care to discover a train. And whether or not having exercised this care once, at a certain place, he should make another effort to discover the train before he reaches the track is also a question ordinarily for the jury." See, also, Quanah, A. & P. Ry. Co. v. Eblen et al. (Tex.Civ.App.) 87 S. W.(2d) 540.

"The trial court will, and it should, reconcile apparent conflict in the jury's answers if this can be reasonably done in the light of the facts of the particular case, the pleadings and evidence, the manner in which the issues were submitted, and in view of other findings when considered as a whole. * * * If upon a reasonable interpretation of the findings it appears that they are not in real and irreconcilable conflict, then they form the proper basis for a judgment." 41 Tex. Jur., p. 1224, par. 360.

The appellants charged appellee with no negligence in failing to keep its crossing in proper condition nor in permitting the view of an approaching train to be completely obscured until a position within 13½ feet of the center of the track was reached. If a fact issue arises as to whether a party should look again before going onto the track after he had once looked with a clear vision and saw no approaching train, it is manifestly a fact issue as to whether a party who looked once from a point from which his vision was completely obscured should look again before driving onto the track. Under the record and the authorities, issues Nos. 41 and 43, the answers thereto, were not immaterial, could not be disregarded, and were not in conflict with the answers to issues Nos. 18–A, 19, and 20.

■ The appellants challenge as error the action of the court in submitting certain special issues on contributory negligence because immaterial and without support in the testimony. We think there was sufficient testimony to require the submission of such issues, but, if not, since the effect of the findings on each of said issues was in favor of appellants, these assignments do not present error.

■ The appellants complain of the action of the court in overruling their motion for new trial because of the alleged misconduct of the jury. They contend, first, that while considering the issue of contributory negligence the jury was advised by Mr. Shelton, the foreman, who had theretofore been county judge and district clerk, that a finding that plaintiffs and defendants were both guilty of contributory negligence would not affect the recovery of damages; second, that although he qualified on his voir dire examination, he had a bias and prejudice against appellants, and was disqualified, having told one of the jurors after the jury was impaneled that he should not have been selected as he knew too much about the case; and, third, that he gave testimony against them dehors the record.

The statement of facts on motion for rehearing contains 75 pages of testimony, some of which would support the contention of appellants, but such testimony was sharply controverted. Mr. Shelton testified emphatically that he did not inform the jury or any member thereof that if they found plaintiffs guilty of contributory negligence they could not recover damages; that he told no one he was disqualified because he knew too much about the case; that he did not say that the jury should be as light as possible on the defendants because some one working for them might lose his job.

The record indicates that the jury began their deliberations on May 30th and returned their verdict before noon June first; that during the first afternoon, before any issue had been determined, inquiry was made as to the effect a finding of both parties guilty of negligence would have upon appellants' recovery of damages. Some of the jurors thought it would defeat a recovery, and others that it would have no effect. On account of this difference of opinion it was agreed that the matter should be submitted to the court, and in writing the foreman asked the court in effect if the jury found both plaintiffs and defendants negligent, would it avoid the verdict allowing damages. In reply to this question the court advised in substance by written charge that the jurors were not concerned with and should not consider the effect of their findings on the judgment, but should answer the issues from the testimony. After this charge was received and read by the foreman the question was probably mentioned, but when it was some of the jurors would say that under the instructions of the court you must not discuss that. All of the testimony of any probative force offered by appellants on the issue was directed toward the misconduct of the foreman, and the evidence relative to any statement by any of the other jurors on the question is too uncertain, indefinite, and unsatisfactory to authorize a finding for appellants, and the overruling of their contentions was not an abuse of his discretion. Daniel v. Kosminsky et al. (Tex.Civ.App.) 85 S.W.(2d) 840.

The testimony indicates that while they were considering awarding appellants the sum of $5,000 damages, Mr. Shelton said he knew appellants' entire family, and they had accomplished very little. He also stated, at a time when the jury was not considering their verdict, that the big corporations, the Humble Oil Company and the Sinclair Oil Company, and the railroads and banks, had, by the prompt payment of their taxes, kept the county out of bankruptcy. This statement was made, not while the jurors were deliberating on their verdict, but as they returned from supper, in a general discussion relative to the delinquent taxes of the county.

■ The statement of the juror that he knew appellants' family and they had accomplished very little was a conclusion authorized by the testimony heard on the trial, and the fact that the jury found damages in the sum of $5,000 and no complaint is made of the amount thereof, in our opinion authorized the trial court to conclude that no injuries resulted to appellants from such statement.

"We are unwilling to establish the rule that if a juror, during the deliberation of the jury, states that he is well acquainted with one of the parties to the suit and argues insistently in favor of returning a verdict in favor of such party that this is of itself sufficient to show

such bias as to disqualify him under the statute." Allbright et al. v. Smith et al. (Tex.Com.App.) 5 S.W.(2d) 970, 971. See, also, Lewis et al. v. Halbert et al. (Tex.Civ.App.) 67 S.W.(2d) 430; Southwestern Bell Telephone Co. v. Ferris (Tex.Civ.App.) 89 S.W.(2d) 229.

"If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside; but the judge who tried the case seems to have acted promptly and fairly in the investigation, and we know that he could form safer conclusions from examining the jurors than this court can from the record. There is much in looking at the man who testifies." Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

"If the evidence as to misconduct be conflicting, the trial court's finding binds the appellate courts as does any other fact finding on conflicting evidence." Casstevens v. Texas & Pac. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 639, 73 A.L.R. 89; quoted with approval by the Commission of Appeals in Boddeker v. Olschewske (Tex.Com.App.) 94 S.W.(2d) 730.

"We further hold that, where evidence is heard by the trial court on motion for new trial concerning alleged misconduct, and such evidence is conflicting touching the question as to whether said alleged misconduct actually occurred, the part of the evidence which supports the judgment of the trial court will, on appeal, be presumed to have been found by said court in favor of his judgment." Bradshaw v. Abrams (Tex.Com.App.) 24 S.W.(2d) 372, 374.

We have carefully considered the other assignments, and having found no reversible error, the judgment is affirmed.

### On Motion for Rehearing.

The appellants in their motion challenge the statement in the opinion of the court that the jury found appellant "was guilty of negligence in driving the car with more than two people in the seat with him, but that such negligence was not the cause of the collision."

The court in his charge submitted special issue No. 27 in this language: "Do you find from a preponderance of the evidence that the action of the plaintiff, Clarence Higginbotham, while driving his automobile with more than two people on the front seat thereof was contributory negligence?' Answer 'yes' or 'no.' " Answer: "Yes."

Immediately following is special issue No. 28: "Do you find from a preponderance of the evidence that the action of the plaintiff, Clarence Higginbotham, in driving his automobile with more than two people in the front seat thereof was the sole proximate cause of the injuries of the plaintiff? Answer 'yes' or 'no.' " Answer: "No."

We only gave the effect of the findings of the jury in the original opinion, and special issues 27 and 28, with the answers thereto, we think amply justify the statement challenged.

Appellants insist that we state the testimony adduced on the main trial showing or tending to show that appellants' family had accomplished very little.

Clarence Higginbotham testified the accident for which he sought to recover damages occurred in May, 1934; that in 1929, before the depression, he had been employed by the Mitchel Furniture Company, and after 1929 "the only work I have done is for Mr. Mitchel and pick-up jobs and for the C. W. A. and for Mr. Dilley"; that he worked for Mr. Mitchel six years before the trial; that he did not remember whether he worked for anybody in 1931; that in 1932 he painted a house for Mr. McCain; that he did not know how many days that required; he could give no estimate of the work he did in 1933; that he mowed the lawn and took care of the flower house for Mr. Dilley for three months beginning in March, 1934. He did not remember any of the parties for whom he did the pick-up jobs; how long he worked at any of them, and failed to state what, if anything, he had earned. This evidence, we think, tends to show that his family had accomplished very little.

We have not ascertained from the statement of facts on motion for rehearing, nor has appellant furnished any reference thereto, by which we are able to determine how many jurors were present when Mr. Shelton made the statement relative to the taxes paid to the county by the corporations.

Mr. Shelton testified in substance that in the six days the jury were together they discussed practically everything, and

in discussing the tax problem in a general way that he had stated that the big corporations had really saved the county from bankruptcy; that the statement was not made in connection with the case, and had nothing to do with it, but was in a general discussion when they were discussing other problems.

He testified: "That discussion came up in discussing the tax problem and oil development in the county, and the best I recall it was one night as we came back from supper, and discussing the payment of delinquent taxes a number of jurors, as well as myself, mentioned they had not been able to pay all their taxes, and I believe I did make this assertion, that the Humble Oil Company and the Sinclair Oil Company and the railroads, as well as the bank, had been responsible for keeping this county out of bankruptcy for the last three or four years."

Q. "Did you make the statement just confining your statement to the I. & G. N. Railway Company in discussing the Higginbotham case, and that the I. & G. N. Railway was a large tax payer and paid its taxes promptly and but for it the people would have lost their homes, and for that reason the jury ought not to be very hard on the railroad company in this case? A. No, sir, I did not.

"Q. Anything like that said by you or in your presence or hearing? A. No, sir, was not."

None of the jurors who testified claimed to be influenced by the discussion of the delinquent taxes.

In the original opinion, relative to the complaint about delinquent taxes, we said: "This statement was made not while the jurors were deliberating on their verdict, but as they returned from supper in a general discussion relative to the delinquent taxes of the county." This language was used in an effort to reflect the testimony, but not to justify the discussion about taxes.

The appellants insist that we failed to pass on their assignment to the effect that it constitutes reversible error "where one of the jurors during the deliberation of the jury urges another juror to make a verdict contrary to such juror's wishes," because if the trial resulted in a hung jury it would necessitate another trial, and the county would have to pay the expenses of same.

In the original opinion, speaking of the misconduct of the jury, we used this language: "All of the testimony of any probative force offered by appellants on the issue was directed toward the misconduct of the foreman, and the evidence relative to any statement by any of the other jurors on the question is too uncertain, indefinite and unsatisfactory to authorize a finding for appellants, and the overruling of their contentions were not an abuse of his discretion."

 We made this ruling because the law provides for a retrial if a jury fails to agree, and that the county shall pay certain portions of the expenses thereof. Jurors are presumed to be men of reasonable intelligence, and are charged with the knowledge of the law, and, therefore, we concluded that the statement was not evidence of misconduct. Blue Diamond Motor Bus Co. v. Hale et ux. (Tex.Civ. App.) 69 S.W.(2d) 228.

The motion for rehearing is overruled.